## SANDERS ET AL. *vs.* CABANISS.

[MOTION TO REMAND CAUSE, PENDING APPEAL IN THIS COURT.]

1. *Fifth section of act, approved December 17th, 1868 ; unconstitutionality of.*—The fifth section of the act, entitled "An act to declare void certain judgments, and to grant new trials in certain cases therein mentioned, and to repeal §§ 2876 and 2877 of the Revised Code of Alabama," approved December 17th, 1868, is unconstitutional and void, because i$^t$ violates the 3d article of the constitution. In its passage the legislature exercised a judicial, not a legislative power.

2. *Judicial power ; what is.*—The power to render judgments and decrees, and to declare them void, or to set them aside and grant new trials and rehearings, is a judicial power, and can not be exercised by the legislative department of the government.

3. *Appeal ; what may be determined .by this court, on.*—When a case is properly in this court by appeal, the court may hear and determine any callateral, incidental question arising in the case, showing that the appeal should not be further prosecuted in this court.

APPEAL from the Chancery Court of Madison.
Heard before the Hon. S. K. MCSPADDEN.

THIS was a motion by the appellants, to remand this cause to the chancery court of Madison ; the decree appealed from having been opened, and the cause re-instated upon the docket by said court, upon their motion, since the appeal to this court. The other facts of the case will be found in the opinion of the court.

BEIRNE & GORDON, *pro* motion.
WALKER & BRICKELL, and ROBINSON & WALKER, *contra.*

[No briefs came into the reporter's hands.]

E. W. PECK, C. J.—On the 21st day of February, in the year 1866, the appellee and Charles P. Cabaniss, as executors of the last will and testament of Samuel Townsend, deceased, filed their bill of complaint in the chancery court of the 29th district, in the northern chancery division

of this State, composed of the county of Madison, against the appellants, William W. Sanders, executor, and Virginia H. Markham, executrix of the last will and testament of Samuel C. Townsend, deceased, and against the said Virginia H. Markham, in her own right, and John Markham, her husband.

The object of the bill was to set up and enforce a lien on certain lands described in the bill of complaint.

The defendants were brought into court by summons, and plead to, and answered the complainants' said bill of complaint.

Such proceedings were had in the case, that at the June term of said court, in the year 1868, the same was submitted for a final decree, and, by consent, was held up for decision in vacation, as of said June term ; a final decree was made, and on the eleventh day of August, in the year 1868, was filed in the office of the register of said court.

By this decree a lien was adjudged and decreed to exist on said lands, to the sum of twenty-four thousand nine hundred and twenty-five dollars and twelve cents, and unless that sum, with the interest and costs of suit, were paid by the first day of October, in the said year 1868, by the appellants to the appellee, the said Septimus D. Cabaniss, as executor, &c., (his co-executor, Charles P. Cabaniss, having resigned before the bill was filed, leaving him sole executor,) the register should proceed to sell said lands at public outcry, to the highest bidder for cash, and out of the proceeds of said sale, should first pay the costs of suit, and then pay to said complainant, executor, &c., as aforesaid, his debt and interest, &c., and the remainder, if any, bring into court, at the next term thereof.

From this decree, the appellants, on the 28th day of November, 1868, appealed to this court, and on the 4th day of January of this present year, filed the transcript with the clerk of this court, and assigned sundry errors on the same.

After this appeal was taken, to-wit, on the 17th of December, in the year 1868, an act of the general assembly of this State was passed and approved, entitled, " An act to declare void certain judgments, and to grant new trials in

certain cases therein mentioned, and to repeal §§ 2876 and 2877 of the Revised Code of Alabama."

After the passage and approval of this act, the appellants, at the present term of this court, to-wit, on the 6th day of January, entered upon the motion docket a motion to remand this cause, upon the ground that on the 1st day of January, 1866, an order was granted by the chancellor of the fifth chancery district, (being the same as chancery district twenty-nine, in which the bill of complaint was filed,) northern chancery division of Alabama, whereby said decree in said cause was opened, and the same re-instated upon the docket for further action, at the next term of said chancery court.

A certified transcript of said order, opening said decree, &c., was submitted and filed as the basis of said motion, together with a copy of the sai ? act of the general assembly, under which the order was made by the chancellor.

This motion was made under the 5th section of said act, and the said transcript of said order, opening said decree, &c., shows that the application, for that purpose, was accompanied with an affidavit that the cause of action did originate prior to the 25th day of May, 1865.

This motion was fully argued by the counsel of both the parties, on the first motion day of this term.

It was resisted by the counsel of the appellee, upon the ground that the said act of the general assembly, under which the application of the chancellor was made, and by virtue and authority of which he made the order, opening said decree, is unconstitutional and void.

The first matter to be decided is, whether the question arising on the motion, the validity of the said act, is before the court in such a shape that we can consider of, and determine it. If the said act is constitutional and valid, then the said order of the chancellor, opening the said decree and re-instating the cause upon the docket in his court for further action, &c., is a legal order, and if a legal order, then there is *now* no final decree in that court, to be either affirmed or reversed by this court. We can with no propriety proceed to hear and determine the appeal in this case, if the decree on which the appeal was taken has, by

reason of some matter or cause arising since the appeal was taken, ceased to have any existence. The case being in this court regularly by appeal, a majority of the court hold that we may hear and determine any collateral, incidental question, arising in the case, showing that the appeal should not be further prosecuted in this court—in other words, that, in fact, there is no longer any final decree in the court below, and, consequently, none in this court, to be either affirmed or reversed—and for that reason, to proceed to hear the case, and to affirm or reverse a decree that has ceased to have any legal existence, would be altogether a vain act.

The order, in the court below, opening the final decree, which had been there rendered, is not a final order or decree in the case, but merely interlocutory in its character; it does not determine, or pretend to determine, in any way, the merits of the case; its operation has more nearly the effect of a new trial at law, than anything to which we can compare it; it opens the whole case, and gives the appellants a new hearing, a new trial, on the merits; such a decree has none of the characteristics of a final decree, which always substantially puts an end to the cause, by granting relief, or dismissing the bill.

In not being, then, a final decree, no appeal can be taken on it; for these reasons, a majority of the court have determined to consider and dispose of the motion on its merits. We believe it of the utmost importance, not only to the parties litigant, but also to the whole people, to have the validity of said act settled and determined as soon as practicable. If the act is invalid, an early knowledge of that fact will prevent much fruitless litigation, trouble and expense, as well as save the courts much unprofitable and unnecessary labor. If valid, then the parties seeking relief under the act, can go on without doubt or embarrassment, and without the delay and trouble of having, in every case, perhaps, to meet and settle questions as to the constitutionality and validity of said act.

We, therefore, proceed to the consideration of the main question made on said motion, to-wit, the constitutionality and validity of said act, or so much as is necessary to de-

cide this motion. The act is entitled " An act to declare void certain judgments and to grant new trials in certain cases therein mentioned, and to repeal §§ 2876 and 2877 of the Revised Code of Alabama ;" the act was approved December 17th, 1868. It consists of seven sections, but it is only deemed necessary to set out here the fifth section thereof, the section upon which the motion is founded, the validity of which must be sucessfully maintained, or the appellant's motion must be overruled. This section is in the words and figures following : " Sec. 5. Be it further enacted, That any judgments or decrees rendered since the 25th day of May, 1865, when the original cause of action originated prior to that date, such judgment or decree shall be opened on application as hereinbefore provided, accompanied with an affidavit that such cause of action did originate prior to the 25th day of May, 1865." The words in this section, " on application as hereinbefore provided," manifestly refer to the third section of the act, which shows the application may be made to the judge of the court having jurisdiction, in term time or in vacation.

The appellee's counsel resists the motion upon the ground of the invalidity of said act. He insists that the act, especially the fifth section thereof, is unconstitutional and therefore void, because it is in conflict with—1st. the third article of the constitution of this State, which is entitled, "Distribution of Powers of Government." Section 1st says, " The powers of the government of the State of Alabama shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to-wit : Those which are legislative, to one ; those which are executive, to another ; and those which are judicial, to another.

Section 2d declares, " no person, or collection of persons, being of one of those departments, shall exercise any power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted."

II. He says it is void, because it is in conflict with the 8th section of the bill of rights, which declares that no person " shall be deprived of his life, liberty, or property, but by due process of law."

13

III. He insists that the said act is also void, because it is a law impairing the obligation of contracts.

1. We proceed now to the examination of the first objection to the validity of the said act—to-wit, that it is in conflict with the third article of the constitution of this State. It is, in this motion, only necessary for us to consider whether the fifth section of the act is valid or void, as the motion is founded, or rather depends upon that section. The arguments of counsel were mainly confined to the consideration of said section ; the third section being referred to, only to show that the application to open the decree, as was done in this case, might be made to the chancellor in vacation. The latter part of said third section says, the application may be made to the judge of the court having jurisdiction, in term time or vacation.

If in passing this fifth section, the general assembly exercised a judicial, and not a legislative power ; then we have no choice left to us in the matter, but are bound to declare it void, as it certainly does not fall within the exception contained in the second section of said third article· All the powers of the government, under the constitution, belong properly and exclusively to either the one or the other of the departments named, and none of said powers can be both judicial and legislative.

In the highest sense, God is the source and fountain of all power, but in free governments all political power is in the people, and can only be derived from them ; and is exercised by them, either immediately in their assemblies, or by those to whom they have been pleased to delegate it. In pure democracies, the people may immediately, and generally do make, judge of, and execute the laws ; they prescribe rules of action, try and condemn those who violate them, and execute their own sentences or judgments.

All who have any correct knowledge of history, know how apt such governments are to act hastily and without sufficient deliberation, being often times moved by their prejudices and passions, inflamed by their public orators, and in this way are very often guilty of the grossest injustice, cruelty and despotism. But few, if any, such governments now exist; the little government of San Marino, in

the mountains of Italy, may, perhaps, be one. In free representative governments, like those established by our own people in the United States, the powers of government have been delegated, and are exercised by those to whom they have been intrusted, and their acts, to be valid, must be performed in the way and manner prescribed, and in no other way. In this country it is our peculiar happiness, and our rights and liberties are thereby guarded and protected, to live under constitutional governments; these governments are made and instituted by the people, and exist under written constitutions, framed and made by themselves. In these constitutions, the powers of government, generally, and it may be in all of them, as in our own State, are committed to three separate and distinct departments, the legislative, the executive and the judicial; and each one of these distinct departments can only exercise the powers properly belonging, and expressly delegated to it, under, and by the constitution; and each one is expressly prohibited from exercising any of the powers belonging to either of the others, unless it is so expressly provided in the constitution.

It would be a clear violation of this article of the constitution, for the legislative department to exercise the executive and judicial powers, or either of them; or the executive to exercise the legislative and judicial powers, or either of them; or the judicial department to exercise the legislative and executive powers, or either of them. The wisdom of so separating the powers of government, and of keeping them distinct, and committing them to separate bodies of magistracy, is manifested by the fact that it is so done, as far as we now remember, in all the constitutions of the several States. It is a separation necessary to promote the peace and safety of the people, and to protect both the people and the constitution itself. If either of these departments encroach upon, or exercise any of the powers committed to the others, or either of them, their acts are utterly null and void.

The language of this third article of the constitution is so plain and unambiguous as to leave, as it would seem,

no room for interpretation or explanation, and but little, if any difficulty has ever existed, when it was once ascertained that a particular power was a power belonging to one of the departments ; then it was clear it could not be exercised by either of the others.   For example, if it was a judicial power, then it could not be exercised by either the legislative or executive department.

The lines of separation, however, some times approach so near to each other, that, in some cases, it requires great precision to determine where the true line of separation is ; that is, to determine whether a particular power is a legislative or a judicial power.   On this subject there is much said in both the text books and the decided cases, but there is great agreement of opinion in all of them.

Mr. Cooly, in his late and approved work on Constitutional Limitations, speaking of the difference between the departments of governments under State constitutions, and the powers they respectively exercise, and what are judicial, and what legislative powers, and that these powers can only be exercised by the proper department, says : " The difference between the departments undoubtedly is, that the legislature makes, the executive executes, and the judiciary construes the law."   Again, " the legislative power extends *only to the making of the laws*, and in its exercise it is limited and restrained by the paramount authority of the federal and State constitutions."   Also, that " that is not legislation which adjudicates in a particular case, and prescribes the rule contrary to the general law, and orders it to be enforced."   And also, that " it is the province of judicial power to decide private disputes between, or concerning persons, and of the legislative power to make laws for the benefit and welfare of the State."   Again, " that as the legislature cannot set aside a construction of the law, already applied by the courts, to actual cases, neither can it compel the courts for the future to adopt a particular construction of a law which the legislature permits to remain in force ; to declare what the law is, or has been, is a judicial power ; to declare what the law shall be, is legislative ;" that " one of the fundamental principles of all our governments is, that the legislative power shall be separate

from the judicial." These quotations, and much more on the same subject, may be found on pages from 91 to 95, with many reported cases, referred to in the notes, to sustain the text.

Mr. Sedgwick, in his valuable book on statutory and constitutional law, from pages 166 to 170, says : " The legislature is to confine itself to making laws, and cannot make *decrees or determine private controversies.* It has been said, that which distinguishes a judicial from a legislative act is, that the one is a determination what is the existing law in relation to some particular thing already done or happened, while the other is a predetermination of what the law shall be, for the regulation and government of all future cases falling under its provisions. This, like other definitions on this subject, may be defective ; but the general idea is correct, and the efforts of the courts to repress the State legislatures within their proper limits, are very curious and instructive." Again he says : " It is difficult to classify these objectionable laws, but they will be found generally to range under three heads : First, where the legislature, by a special act, has sought to dispense with a general law in favor of an individual; second, where the act is one of legislation for a particular case ; third, *where the act is in its nature judicial*—that is, seeks to influence *directly or indirectly*, the determination of private controversies. In these cases the judiciary have, with an intelligence and firmness that do them great honor, frequently interposed to arrest the operations of the State legislatures; and the legislatures, with equal intelligence and virtue, have, in a great majority of cases, recognized the wisdom and propriety of the judicial interference, and have, without contest or reluctance, made their action conform to the decisions of the courts."

The author then refers to several cases, under the three heads above named, where objectionable legislation and laws are classified. He says : " In Vermont, an act of the assembly releasing a debtor imprisoned, on execution at the suit of a party, from his imprisonment, and freeing his body from arrest for a limited time, has not the characteristics of a law, and is void." Again, " in the same State,

a special act of the legislature, granting to a party the privilege of an appeal from a decision of the commissioner on claims of an insolvent estate, after the time allowed by law for taking appeals, in such cases, is void, as being ' in the nature of a sentence or decree, rather than a law, wholly retrospective in its operation, and taking away vested rights.' "

So in Massachusetts, " it has been held that a resolve of the legislature, empowering a judge of probate to take an administration bond, in a mode differing from that prescribed by the general laws of the commonwealth, *is not imperative ; and that, if it were, it would be unconstitutional.*"

In *Bates v. Kimball*, 2 Chip. 77, it is decided that an act of the legislature granting an appeal beyond the time allowed by law, is *a decree rather than a law*, and therefore void. In *Crane v. Meginnis*, 1 Gill & Johnson, 463, it is held that an act of the legislature, granting a divorce and giving alimony to the wife, is an exercise of judicial powers, and for that reason, void. So in *Edwards v. Pope*, 3 Scam. 565, it is decided that an act by a State legislature, declaring that a widow is entitled to dower, is a judicial determination, and void. So in *Lane v. Dorman*, 3 Scam. 238, it is determined that an act of a State legislature authorizing a party to sell so much of the lands of a deceased person, as would be sufficient to raise a given sum of money, and *directing* the same to be applied to the extinguishment of certain claims against the estate of the deceased, is a *judicial act*, and as such, unconstitutional and void. In *Burt et al. v. Williams*, 24 Arkansas, 91, it is decided that " so much of an act of the legislature of that State, approved 1st December, 1862, as provides ' that all suits at law, or in equity now pending, or hereafter to. be commenced, in any of the courts of this State, shall be continued until after the ratification of peace between the United States and the Confederate States,' " is unconstitutional; the continuance of criminal suits, directed by the act, being in violation of the constitutional right. of the accused to a speedy trial. And the continuance of all civil suits, being in violation of the constitution, which prohibits

the passage of any law impairing the obligation of contracts; that "granting a continuance is *exclusively a judicial act*, and is not a proper subject, or legitimate use, of legislative authority. In *Lewis et al. v. Webb, adm'r*, 3 Greenl. 326, it is determined that the legislature have no authority by the constitution, to pass any law or resolve, granting an appeal or a new trial, in any cause between private citizens, or dispensing with any general law in any particular case; that if the legislature undertake to exercise judicial power, they invade the province of the judiciary, because the constitution and the laws have placed all judicial power in other hands.　In the opinion in this case by Millen, C. J., he asks the question—"Can the legislature, by a mere resolve, set aside a judgment or decree of a judicial court, and render it null and void?" and answers it as follows : " This is the exercise of power common in courts of law; a power not questioned ; but it is one purely judicial in its nature and consequences.　It is one of the striking and peculiar features of judicial power, that it is displayed in the decision of controversies between contending parties, the settlement of their rights, and redress of their wrongs.　But it is urged, that the resolve is not liable to objection on constitutional ground; that the authority exercised by the legislature, is not in any degree judicial; that the resolve goes no further than to authorize a re-examination of the cause, to empower one judicial court to review the proceedings of another judicial court, by way of appeal, and thus to do complete and final justice to all concerned.　It is true, the resolve does not *in terms* purport to transfer property directly from one man to another, by mere legislative authority; but it professes to grant to one party in a cause which has been, according to existing laws, *finally decided,* special authority to compel the other party, contrary to the general law of the land, to submit his cause to another court for trial, the consequence of which, may be the total loss of all those rights, and all that property which the judgment complained of had entitled him, and those claiming through, or under him, to hold and enjoy ; that is to say, it professes to accomplish in an *indirect and circuitous manner*, that which the existing

laws forbid, and which, by a direct and legal cause, cannot be attained, and to perform an act respecting a cause between party and party ; an act, therefore, of a judicial character in the simple form of legislation." In principle, there is no real distinction between the case here cited and the one under consideration ; but the case under consideration, in its features, is altogether a plainer and a more decided case of legislative encroachment, than was either attempted or intended by the resolve of the legislature of the State of Maine, which gave rise to the case, from the opinion on which the above quotation is made. In the case of *Young v. The State Bank*, 4 Indiana, 301, it is decided that the granting of a new trial is a judicial act, and that it could not be granted by an act of the legislature. In the case of *Taylor v. Place*, 4 Rhode Island, 324, it is held that a vote of the general assembly *opening judgments*, obtained in the court of common pleas, in order to let in amendments, &c., is an act of judicial power, in the constitutional sense, and therefore void. In the case of. *The State of Pennsylvania v. The Wheeling and Belmont Bridge Co. et al.*, 18 Howard, U. S. Reports, 421, it is held that an act of congress cannot annul a judgment of the supreme court of the United States, or *impair the rights* determined thereby, especially as respects adjudications upon the private rights of parties. There are many other cases on this subject in harmony with this opinion, in the reports of the United States and the States of the Union ; many of them may be seen by reference to the brief of the appellee's counsel ; but we do not think it worth while to lengthen out this opinion by commenting upon, or even citing them here. We will end what we have further to say on this particular question, by referring to the decisions of this court on the same subject.

In the case of *Haley et al. v. Clark*, 26 Ala. 439, the appellants in this case had become liable to pay, and had paid, to the county treasurer, for the use of the county, a fine of five hundred dollars, as the securities of the late clerk of the circuit court of the county, and then procured an act of the legislature to be passed, by the first section of which, it is enacted " that the treasurer of Marion

county be, and he hereby is, directed to pay to Allen Haley, John M. Frederick, John T. Saunders, and William Warren, the securities of John Douglass, the late clerk of the circuit court of Marion county, the sum of five hundred dollars, that being the amount of a fine which they have paid for said Douglass, in consequence of said Douglass having failed to comply with the requisitions of the second section of the act of 1834."

The treasurer refused to pay the money, as directed by the act, and thereupon the said appellants applied to the circuit court for a *mandamus*, which was denied, and an appeal brought the case to this court; the question to be decided, on that appeal, was the constitutionality of the said act.

The court held, that the said act was unconstitutional and void, because the legislature, in its passage, exercised an executive, and not a legislative power ; that it mattered not whether the act was passed before or after the fine was paid; that, by the constitution, the powers of the government are divided into three distinct departments, each of which is confided to a separate body of magistracy, to-wit : Those which are legislative to one, those which are executive to another, and those which are judicial to another, and that no one of these departments can exercise any power, properly belonging to either of the others, unless expressly directed or permitted by the constitution ; that the power to pardon offenses, and to remit fines and forfeitures, is an executive power, and by the fundamental law committed to the executive branch of the government alone, and, therefore, cannot be exercised by the legislature.

The only question in that case was, whether the act referred to was an attempt, directly or indirectly, to remit a fine, for, if it was so, the mode and manner in which it was done was entirely immaterial. It is the right which the constitution denies, without reference to the mode in which it is exercised ; that, though the act, in so many words, does not remit a fine or pardon an offense, yet, that it was impossible for any one to read the first section of the act without seeing that its purpose was identical with a pardon, the plain intention to relieve the parties against

a fine, which the law had imposed on them ; that, to permit this to be done in the indirect way adopted by the legislature, would be to allow one department of the government to trench upon the powers of another, and to defeat the purpose which the constitution contemplated in confining the pardoning power to one branch of the government, and then to permit it to be indirectly exercised by another. Now, does not that case, and the reasoning therein employed, and the principle decided, clearly show, when applied to this case, that the legislature, in the passage of the act, the constitutionality and validity of the fifth section of which we are considering, exercised a judicial, and not a legislative power ? In that case, the legislature attempted, by indirection, by requiring the treasurer after a fine had been paid to him for the use of the county, to repay it to the parties upon whom the fine had been inflicted. This, the court held, was the exercise of an executive, and not a legislative power.

So, in this case, the manifest purpose of the legislature, in the passage of this act, was to effect an opening and setting aside of certain judgments and decrees, and to grant new trials and rehearings, by peremptorily commanding it to be done by the courts and judges, without permitting them to exercise any judgment in the matter; they certainly exercised no judicial power, for they are prohibited from having any mind in the case.

If there can be any doubts on this subject they are cleared away and removed, by reference to the title of the act, which is " An act to declare void certain judgments, and to grant new trials in certain cases therein mentioned." To do this is clearly to exercise a judicial, and not a legislative power; a power that legitimately belongs to courts and judges.

In the case of *Dorman v. The State*, 34 Ala. 216, 230 and 231, the court, after stating that, by the constitution of this State, the powers of government are distributed to three departments, ( the legislative, the executive, and the judicial,) say that each of these departments is emphatically forbidden to exercise any of the powers belonging to either of the others.

In the case of the *Alabama Life Insurance & Trust Co.
v. Boykin*, 38 Ala. 510, the court decide that the first sec-
tion of the act of February 8th, 1858, to fix the mode of
conveying the estates of husband and wife, and for other
purposes, (Session Acts of 1857–8, p. 30,) which provides,
that conveyances by husband and wife heretofore made,
shall not be held insufficient in law, on account of defects
in the certificate of acknowlegment, is unconstitutional.
The court hold that the passage of the act was an attempt
to make valid and effective, that which was before inopera-
tive and void; effective, to divest a title out of one, and
vest it in another, and this by a mere edict of legislation ;
an attempt to declare, not only what the law shall be, but
what the law has been ; that " to declare what the law is,
or has been, is a judicial power, and to declare what the
law shall be, is legislation ;" in other words, that the pas-
sage of the act was a judicial power.

In the case of *Carleton & Slade v. Goodwin, Ex'r*,
41 Ala. 153, it is ruled that the act approved February 18,
1867, entitled " An act to prevent undecided appeals to
the supreme court from loosing their force by discontinu-
ance or otherwise, unless the appellant moved for a discon-
tinuance, after a legal cause therefor has occurred, (Session
Acts of 1866–67, p. 547,) so far as it operates on appeals
which had been discontinued by operation of law at the
time of its passage, is an attempt by the legislature to ex-
ercise judicial power, and is, therefore, unconstitutional and
void. The Chief Justice, in the opinion of the court, says :
" The decision whether a cause is discontinued or not,
must, of necessity, belong to the courts. These are all
cases in this court, and have settled the construction of the
third article of the constitution for us, to-wit, that the legis-
lature cannot exercise a judicial power; and they also de-
cide what a judicial power is, and that the legislature, in
the passage of the acts that gave rise to these cases, exer-
cised judicial powers, and that the said acts were, there-
fore, unconstitutional and void. We think that no person,
with any considerable knowledge of the law, can fail to
see that the acts, in the cases referred to, are by no means
as clear and well defined cases of the exercise, by the leg-

islature, of judicial powers, as the act under consideration; yet they are all of them declared void for that reason. The decree of the appellee in this case, by authority of the act before us, has been opened, and the case reinstated upon the docket for the further action of the court; that is, a new hearing granted on the *ex parte* application of the appellants, on the mere affidavit of the appellants, or one of them, that the cause of action did originate prior to the 25th day of May, 1865, without any day in court, any notice even to the appellee. The chancellor, by the act, is stripped of all the attributes of a judge; he is not permitted to exercise any of the functions or duties of a judge; not permitted to consider or determine whether the decree was right or wrong, nor were the appellants bound to show the decree was in any wise erroneous, or that they were legally injured by the decree; not bound to show that they had any merits in the case or defense to make, or, if they had any excuse, why it was not made on the hearing of the case. The chancellor is expressly prohibited from exercising any judgment whatever in the matter, nor was he allowed, under any circumstances, to deny the application; grant it he must. He is, in fact, made the mere instrument of the legislature to register their will; nothing more. This, we hold, was a clear and undoubted exercise of judicial powers on the part of the legislature, and that, too, in the most objectional way, by indirection; not doing it directly by the act itself, but by imperatively commanding it to be done by the chancellor. It is a very clear proposition, that what cannot lawfully be done directly, cannot be done indirectly—no device, though it be so cunningly contrived as to make wrong appear to be right, can justify it. We are, therefore, constrained, by a high sense of duty, to declare, and we do hereby declare, the fifth section of the act, under and by virtue of which the decree was opened, and upon which the motion is based, unconstitutional and void; notwithstanding we feel bound so to decide, we nevertheless, have full confidence in the capacity, integrity and honesty of purpose of the legislative body by which the said act was passed, and we will presume they were led into the error inadvertently, or without due consider-

ation, or were moved to it by their sympathies, because of the embarrassed and suffering condition of the country. But good intentions cannot make an act valid, which the constitution declares void ; the decision of the first objection, made to the validity of the fifth section of said act, is decisive of this motion, and being so, we decline to consider the other two objections.   We leave the validity of the remainder of the act to be decided when questions arise upon it, if such questions ever do arise, requiring its validity to be determined, without being influenced by this opinion any further than the principles, here settled, may have such influence.   " Sufficient unto the day is the evil thereof."

The motion is overruled, at the costs of the appellants.

PETERS, J.—I concur with the court in the judgment refusing the motion, in its present shape, to remand this cause to the court below, but for reasons quite different from those assigned in the opinion of the able and learned Chief Justice.

It is wisely said, that courts will not inquire collaterally into the constitutionality of legislative enactments ; and only that part of a statute which is repugnant to the constitution should be declared void.—*State v. Rich*, 20 Miss. 393 ; *Miller v. The State*, 30 Ohio St. 475 ; *Fisher v. McGirr,* 1 Gray, 1 ; *Duer v. Small,* 4 Black ; 1 How. 311.

This court is one of appellate jurisdiction wholly, except in a few cases mentioned, by name, in the constitution itself. And this is not one of the cases thus mentioned.   To draw the statute, referred to in the opinion of a majority of the court, into discussion in this case, makes a new issue, which does not belong to the cause brought here by the appeal. This issue involves the construction of this law, and it can only come here properly upon a case in which it was first raised in the court below.   It is not necessary for the determination of this motion, if indeed the matter, thus brought in, can be said to be *coram judice* at all.   In any event, it is the practice of the courts exercising only appellate jurisdiction, not to seek to raise new points here for the first time, when such points are not an indispensable

part of the issue brought up by the appeal. It makes, so far as it goes, a new case in this court out of materials which do not come up with the matters appealed from, and the consideration of which is not required in order to afford the relief asked. There is no authority known to me, which allows this court to remand a cause regularly in this court upon appeal, except upon judgment of reversal and order for new trial in the court below. There is no inherent power in this court to give itself such authority, without the aid of legislative enactment; and none such can be found.—1 Cranch, 137; 5 How. 119; 6 Cranch, 313; Constitution of Alabama, Article IV, § 1, 2; Revised Code, §§ 3485, 2247. And for this reason the motion can not be granted. I therefore concur with the majority of the court in their judgment, but express no opinion upon the statute in question, or any part of it. It is still an open question, so far as I am concerned; and I am by no means satisfied, upon a very hasty and imperfect examination, that any portion of it is unconstitutional and void. Undoubtedly, the legislature has the power to give the courts authority to grant new trials, (Revised Code, § 2812 to 2827;) for if they have it at all, it must come from this source; and the section of the law objected to, amounts to nothing more; the language in which it is couched is of no consequence. All laws are commands.—2 Bouv. Law Dict. 7; 1 Black. Com., Wendell's, 44; Gen. XX, 3, 4, 5.