CRAWLEY, Judge,
dissenting.
I agree with the statement in Presiding Judge Robertson’s opinion that it is our duty to sustain the constitutionality of a legislative act unless it is clear beyond a reasonable doubt that the act is in violation of fundamental law. I dissent because I believe it is clear beyond any reasonable doubt that the Act is unconstitutional. The Act subverts the principle of res judicata, denies equal protection of the laws to other similarly situated individuals, and violates the separation of powers provisions of the Alabama Constitution.
Res Judicata
The principle of res judicata bars a paternity plaintiff, mother or child, from relitigat-ing her action against an exonerated paternity defendant, and — unless Rule 60(b) affords relief — that principle also bars a paternity defendant from relitigating the action. This court has already decided that K.M. is barred from relitigating the question of the paternity of K.H. In E.B.M. v. V.W., 586 So.2d 230 (Ala.Civ.App.1991), we held that the paternity issue in this case was res judi-cata.
The act undermines our holding in E.B.M. and subverts the principle of res judicata, an *1090 affirmative defense enumerated in Rule 8(c), A.R.Civ.P. The Act thereby violates Art. IV, § 95 of the Alabama Constitution, which states that “the legislature shall have no power to ... destroy any existing defense to [a] suit.”
Presiding Judge Robertson’s opinion emphasizes that the Act is a narrow remedy aimed at righting a specific injustice. The opinion fails to point out, however, that K.M. has already had at least two opportunities to right the injustice of being declared the legal father of a child who is not his biological offspring.
In 1986, the State of Alabama ex rel. G.H. filed a paternity action against K.M., alleging that K.M. was the father of K.H., a child born in 1985. K.M. acknowledged paternity and, on May 9,1986, the family court entered a judgment of paternity and an order of support. K.M. did not appeal.
A year later, in 1987, K.M. filed a motion for relief from the child support order, and, in 1988, a motion to set aside the original paternity adjudication. He attached to his motions the results of an HLA blood typing test that excluded him as the natural father of K.H.[1] The family court denied his motions on August 16, 1988. K.M. appealed to the circuit court on October 19, 1988, but on March 29, 1989, the circuit court dismissed the appeal as untimely because K.M. did not file his notice of appeal within 14 days of the family court’s order. See Rule 28(C), Ala. R.Juv.P. K.M. did not appeal that dismissal.
In 1990, K.M.’s parents attempted unsuccessfully to reopen the paternity case. They filed an action, styled as a petition by the minor child K.H. through her paternal grandparents, alleging that K.M. was not the father of K.H., and seeking to have the adjudication of paternity set aside. The family court ruled that the prior paternity adjudication was res judicata and dismissed the petition. KM.’s parents appealed the dismissal, and this court affirmed in E.B.M. v. V.W..
K.M. did not appeal the 1986 adjudication of paternity or file a timely appeal from the denial of his 1987 and 1988 motions to have the paternity adjudication set aside. He has already had opportunities to prove his non-paternity of K.H. by scientific test results. He has simply failed to follow up on those opportunities. Under a “due diligence” analysis, K.M. would not be entitled to Rule 60(b) relief.
Unlike Rule 60(b), which requires that the moving party be diligent in protecting his interests and file a motion within four months or within “a reasonable time,” the Act at issue here provides no time limit for reopening a paternity action and states no requirement regarding the defendant’s diligence or lack of diligence in defending against the first action, filing an appeal, or seeking a blood test at the earliest opportunity-
At some point — and I think that point is defined within the parameters of Rule 60(b) — the law must be more concerned with finality than it is with doing justice to one who is not diligent in protecting his own rights. There is “no general equitable doctrine ... which countenances an exception to the finality of a party’s failure to appeal.” Federated Dep’t Stores, Inc. v. Moitie, 452 U.S. 394, 400, 101 S.Ct. 2424, 2429, 69 L.Ed.2d 103 (1981). In Moitie, the Supreme Court observed:
“The doctrine of res judicata serves vital public interests beyond any individual judge’s ad hoc determination of the equities in a particular case. There is simply ‘no principle of law or equity which sanctions the rejection ... of the salutary principle of res judicata.’ ”
Presiding Judge Robertson’s opinion states that the Act is an amendment to the Alabama Uniform Parentage Act (AUPA) and is no less constitutional than the AUPA. However, the AUPA outlines the parties who can initiate a paternity action; it does not mandate the reopening of a final judgment or void the defense of res judicata.
*1091 Equal Protection
I agree with Presiding Judge Robertson’s observation that the essence of equal protection jurisprudence is that all similarly situated individuals should be treated alike. For purposes of this case, “other similarly situated individuals” are, at the very least, those persons who were parties to a prior paternity proceeding in which the outcome is contradicted by scientific evidence.
A plaintiff mother or child who has scientific proof that a man found not to be the father in a prior paternity action is in fact the father, is “identically situated” with a defendant who has been declared the legal father of a child but has scientific evidence that he is not the father. Each party claims the result of the paternity proceeding is unjust.
By allowing only the defendant to establish the justice of his claim, however, the Act treats a former paternity defendant (a male) differently from a former paternity plaintiff (most often a female or an illegitimate child). In equal protection analysis, statutory classifications based on gender or legitimacy are subject to an intermediate level of scrutiny; they must be “substantially related to an important governmental objective.” Clark v. Jeter, 486 U.S. 456, 461, 108 S.Ct. 1910, 1914, 100 L.Ed.2d 465 (1988).
The objectives of the act — to remedy the injustice of erroneous paternity determinations and to promote public confidence in the judicial system — are important ones. The classifications established by the legislature, however, are not “substantially related” to achieving those objectives. By allowing only one group of people affected by erroneous paternity determinations — defendant “fathers” — to refute those determinations with scientific evidence, the Act guarantees that the goals of truth and public confidence are achieved for only some of the erroneous judgments. Because the legislative classifications do not significantly advance the legislative goals of the Act, the classifications are not substantially related to achieving those goals, and the Act denies equal protection to the excluded categories of litigants. See Hall v. McBride, 416 So.2d 986 (Ala.1982); Orr v. Orr, 374 So.2d 895, 896 (Ala.Civ.App.), cert. denied, 374 So.2d 898 (Ala.1979).
“When a statute is defective because of underinclusion, a court has two alternatives:
“1) The Court may declare the statute a nullity, and order that its benefits not extend to the class, and
“2) The Court may extend the benefits of the statute to include those who are aggrieved by the exclusion.”
Hall v. McBride, 416 So.2d at 990-91. See also Orr v. Orr, 374 So.2d at 896.
It might be possible to remedy the under-inclusiveness of the Act by extending its benefits to mothers and children affected by erroneous paternity determinations. The reason for extending a statute’s benefits to the excluded classes is to redeem a statute, which would otherwise be constitutional, from invalidity. In this case, however, curing the Act’s equal protection infirmity would not restore it to constitutional health.
Separation of Powers
The Act suffers from another fundamental flaw. It violates the principles underlying Article III, §§ 42 and 43, of the Alabama Constitution of 1901.
Section 42 reads:
“The powers of the government of the State of Alabama shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: those which are legislative, to one; those which are executive, to another; and those which are judicial, to another.”
Section 43 reads:
“In the government of this state, except in the instances in this Constitution hereinafter expressly directed or permitted, the legislative department shall never exercise the executive and judicial powers, or either of them; the executive shall never exercise the legislative and judicial powers, or either of them; the judicial shall never exercise the legislative and executive powers, or either of them; to the end that it may be a government of laws and not of men.”
*1092 The Act directs that “[u]pon petition of the defendant in a paternity proceeding where the defendant has been declared the legal father, the case shall be reopened if there is scientific evidence presented by the defendant that he is not the father.” (Emphasis added.)
Over 125 years ago, the Alabama Supreme Court determined that the legislature could not, without violating the separation of powers provisions of the Alabama constitution, pass an act that required a trial court to reopen a case and grant a new trial. In Sanders v. Cabaniss, 43 Ala. 173 (1869), the court examined the constitutionality of a post-Civil War act “to declare void certain judgments, and to grant new trials in certain cases.” 43 Ala. at 174 — 75. The act provided
“[t]hat any judgments or decrees rendered since the 25th day of May, 1865, when the original cause of action originated prior to that date, ... shall be opened on application [to the judge of the court having jurisdiction], accompanied with an affidavit that such cause of action did originate prior to the 25th day of May, 1865.”
43 Ala. at 177. Our supreme court observed:
“If in passing this [act] the general assembly exercised a judicial, and not a legislative power; then we have no choice left to us in the matter, but are bound to declare it void.... All the powers of the government, under the constitution, belong properly and exclusively to either the one or the other of the departments named, and none of said powers can be both judicial and legislative.”
The court held that the act was unconstitutional because it represented a “clear and undoubted exercise of judicial powers on the part of the legislature,” 43 Ala. at 188, and, therefore, violated the separation of powers doctrine:
“[T]he manifest purpose of the legislature, in the passage of this act, was to effect an opening and setting aside of certain judgments and decrees, and to grant new trials and rehearings, by peremptorily commanding it to be done by the courts and judges, without permitting them to exercise any judgment in the matter....
“If there can be any doubts on this subject they are cleared away and removed, by reference to the title of the act, which is ‘An act to declare void certain judgments and to grant new trials in certain cases therein mentioned.’ To do this is clearly to exercise a judicial, and not a legislative power; a power that legitimately belongs to courts and judges.”
43 Ala. at 186. Observing that it was “constrained, by a high sense of duty,” the Alabama Supreme Court reached the separation of powers question despite the fact that it was not argued as a ground for reversal by the parties. 43 Ala. at 188.
In Ratcliffe v. Anderson, 31 Gratt. 105, 72 Va. 105 (1878), the Virginia Court of Appeals struck down a similar act that authorized the reopening of judgments rendered since March 3,1866. In that case, a debtor wished to reopen a cause after final judgment in order to show that he and his creditor had contracted with the understanding that Confederate currency was the standard of value, and that his debt should be reduced from its nominal amount to its post-War depreciated value. The Virginia court held:
“[T]he act is an attempted exercise of judicial power because it authorizes a court to reopen and review a case which has already passed into judgment. It is now too well settled to admit of serious dispute that the legislative department can no more exercise judicial power than that the judicial department can exercise legislative power. Each is supreme in the exercise of its own proper functions within the limits of its authority. The boundary line of these powers is plainly defined in every well-ordered government; and in this country it is now a well-established principle of law that the three great powers of government — the legislative, the executive, and the judicial — should be preserved as distinct from and independent of each other as the nature of society and the imperfections of human institutions will permit. That system which best preserves the independence of each department approaches nearest to the perfection of civil government and the security of civil liberty.”
*1093 31 Gratt. at 107, 72 Va. at 107. The author of the opinion for the Virginia court continued:
“In the ease before us the legislature interfered to provide a new remedy for the benefit of a class of persons to obtain a rehearing in suits in which judgments and decrees had been made, and became final against them....
“Both upon principle and authority I conclude that the legislature has no right, directly or indirectly, to annul in whole or in part a judgment or decree of a court already rendered, or to authorize the courts to reopen and rehear judgments and decrees already final, by which the rights of the parties are finally adjudicated, ... and that every such attempt of legislative action is plainly an invasion of judicial power, and therefore unconstitutional and void.”
31 Gratt. at 111, 72 Va. at 111.
In Lawson v. Jeffries, 47 Miss. 686, 12 Am.Rep. 342 (1873), the Mississippi Supreme Court held that the following legislative ordinance violated the separation of powers provisions of both the state and federal constitutions:
“[I]n all cases where judgments in the circuit courts and decrees in the chancery or probate courts of this state have been rendered since the 9th day of January, 1861, and prior to this date, the party against whom such judgment or decree has been rendered, ... shall be entitled to a new trial upon filing an affidavit that he or she had no attorney or counsel present at the time of the rendition of said judgment or decree, and that he or she believes that said judgment or decree is unjust.”
47 Miss, at 691, 12 Am.Rep. at 343. The court framed the question presented as follows: “whether ... any legislative body can, by an ordinance or statute, award a new trial absolutely.” 47 Miss, at 694, 12 Am.Rep. at 345. The court answered that question in the negative, holding that the ordinance was “a judicial, and not a legislative act, and, therefore, unauthorized.” 47 Miss, at 693,12 Am.Rep. at 345.
In holding the ordinance beyond the scope of legislative authority, the Mississippi court rejected the following arguments, which have, in substance, been made in the case now before us: (1) that “[t]he allowance of a new trial ... gives the opportunity of ascertaining the righteousness of judgments under circumstances presumed to be more favorable to investigation,” 47 Miss, at 688 (here, a new trial for K.M. gives the court the opportunity to ascertain the true paternity of K.H. by using scientific test results not introduced at the first paternity proceeding); and (2) that “the [legislative body] did not grant new trials. It provided by law for the granting of new trials by the courts on a proper showing by a party to the suit,” 47 Miss, at 689 (here, a new trial is available for K.M. only if he presents scientific evidence that he is not the father of K.H.). The Mississippi court concluded:
“ ‘If a review of such judgments may be ordered for one cause, it may be equally so for another, or any cause within the discretion of the legislature.’ ... If a legislative body may grant a new trial, it may order a continuance, annul a judgment, suspend a trial, direct the judgment to be entered, and otherwise interfere with the discretion and independence of the judiciary. The evils that would flow from such an assertion of legislative power are too apparent to be enumerated.... ”
47 Miss, at 701, 704, 12 Am.Rep. at 351, 353.
Long before the post-Civil War “new trial” cases, the proposition that a legislature could not, without violating the separation of powers doctrine, order a court to grant a new trial was established. In Merrill v. Sher-burne, 1 N.H. 199, 8 Am.Dec. 52 (N.H.1818), the Supreme Court of New Hampshire considered the constitutionality of a statute granting a new trial to the losing party in a probate proceeding. The court noted that the act “does not empower the court in their discretion to grant or refuse a new trial; but directs that ‘the cause shall be heard’ again; and thus amounts to an absolute reversal of the judgment....” 1 N.H. at 202, 8 Am. Dec. at 55. The New Hampshire court stated that “[s]uch being the operation of the act, it becomes proper to examine ... [w]hether the passage of it was not an exercise of judicial powers.” 1 N.H. at 203, 8 Am.Dec. *1094 at 56. An examination of that question prompted the court to observe:
“The grant of a new trial belongs to the courts of law from immemorial usage. The power to grant a new trial is incidental to their other powers. It is a judgment in relation to a private controversy, affects what has already happened, and results from a comparison of evidence and claims with the existing laws. It will not be denied that the consideration and decision by the superior court, of the motion for this same new trial was an exercise of judicial power. If so, a consideration and decision upon the same subject by the legislature must be an exercise of power of the same description; for what is in its nature judicial to-day, must be judicial tomorrow and forever. The circumstance, also, that the legislature themselves did not proceed to make a final judgment on the merits of the controversy between these parties, cannot alter the character of the act granting a new trial. To award such a trial was [a] judicial act.”
1 N.H. at 205, 8 Am.Dec. at 57-58. The court concluded that the act was a violation of the separation of powers principles that guaranteed three independent branches of government. It explained:
“One prominent reason for creating the judicial distinct from the ... legislative department, was that the former might determine when laws were thus ‘repugnant [or contrary to the constitution],’ and so operate as a cheek upon the latter, and as a safeguard to the people against its mistakes or encroachments. But the judiciary would in every respect cease to be a check on the legislature if the legislature could at pleasure revise or alter any of the judgments of the judiciary. The legislature, too, would thus become the court of last resort, ‘the superior court,’ or ‘supreme judicial’ tribunal of the state....”
1 N.H. at 210, 8 Am.Dec. at 57-58, 61-62 (emphasis added). The New Hampshire court emphasized that its conclusion did not “by any means suppose a superiority of the judicial to the legislative power.” 1 N.H. at 201, 8 Am.Dec. at 55. Instead,
“[i]t only supposes that the power of the people is superior to both; and that where the will of the legislature, declared in its statutes, stands in opposition to that of the people, declared in the constitution, the judges ought to be governed by the latter rather than the former.”
1 N.H. at 201-02, 8 Am.Dec. at 55.
In 1952, the Alabama Supreme Court once again held that the legislature had violated the separation of powers doctrine by enacting a law that required the circuit courts to grant new trials under certain circumstances. Title 15, § 305, Code of Alabama 1940, provided that if the prosecutor in a criminal ease made any comment on the accused’s failure to testify, then “a new trial must be granted on motion filed within thirty days.” See Broadway v. State, 257 Ala. 414, 60 So.2d 701 (1952).
In Broadway, the court reasoned that the power of the circuit court to grant new trials derives from the constitution and not from the legislature; therefore, “the legislature cannot take from courts power which it does not give.” 257 Ala. at 418, 60 So.2d at 704 (emphasis added by the court in Broadway). The court concluded:
“It is with great regret that we are constrained to declare, as we have rarely done, that a legislative enactment hampers the orderly functions of constitutional courts in this State, but it becomes necessary for us to do so when a case arises, and we are satisfied beyond a reasonable doubt that such is a proper interpretation of the situation.
“To give [the statute] the effect which its language imports is to deprive the circuit court of its constitutional power to function in a judicial way in that respect. It cannot be rightly conceived that there is legislative competency to create a duty on the part of such a court without exercising any discretion or judgment, when a performance of that duty is an exercise of the judicial function, and if it is performed a compliance would result in the duty to perform a ministerial act on the part of the court to grant a motion for new trial.... Such, it seems to us, is so plainly an infringement by legislative power upon ju *1095 dicial power that we cannot afford to labor under it. The Constitution which created the circuit court and this Court did not contemplate that it should be required to act ministerially in passing upon the rights and liberties of parties before those courts, when such act calls for a judicial function.”
Broadway, 257 Ala. at 418, 60 So.2d at 704-OS (emphasis added).
More recently, in Armstrong v. Roger’s Outdoor Sports, Inc., 581 So.2d 414 (Ala.1991), our supreme court declared unconstitutional, on separation of powers grounds, a statute that removed the presumption of correctness from post-verdict review of punitive damages awards. Armstrong challenged the constitutionality of the statute on a number of grounds, but he did not raise the separation of powers issue. The Alabama Supreme Court noted that “[njormally, a court will not hold a statute unconstitutional except on a basis specifically argued by a party and necessarily presented in the case.” It observed, however, that “[t]his case presents a unique situation, however, because, ... [i]f the [challenged statute] violate[s] the principle of separation of powers, that violation affirmatively intrudes into the judicial process even though §§ 42 and 43 of the Constitution have not been argued.” Armstrong v. Roger’s Outdoor Sports, Inc., 581 So.2d at 416.
I have found few other 20th century decisions holding that legislation mandating the reopening of a judgment or the granting of a new trial violates the separation of powers doctrine. The scarcity of recent cases, however, only convinces me that the proposition is so well established that it is no longer seriously open to question. In addition to the decisions of our own supreme court in Broadway v. State and Armstrong v. Roger’s Outdoor Sports, Inc., the supreme courts of Georgia and Massachusetts have also recently addressed the issue. See Jenkins v. Jenkins, 233 Ga. 902, 214 S.E.2d 368 (1975); Spinelli v. Commonwealth, 393 Mass. 240, 470 N.E.2d 795, 796 (1984).
In Jenkins, the Georgia court dealt with a challenge to a statute that changed the age of majority from 21 to 18 years. The statute provided that it had no effect on judgments entered before the effective date of the act. A father obliged by a divorce judgment to support his child until the age of majority argued that the statute discriminated against fathers who had been divorced before the effective date of the act. Rejecting that argument, the Georgia Supreme Court observed that the statute could not have applied to judgments before the act took effect because “[t]he ‘legislature has no constitutional power to construe or alter judgments.’ ” 233 Ga. at 903, 214 S.E.2d at 369 (citation omitted).
In Spinelli, the Massachusetts court struck down a statute that would have restored a dismissed case to the active docket of a trial court. The court observed:
“The Legislature apparently felt that the judgment of dismissal unjustly deprived the plaintiff of his right to seek compensation for the taking of his property. To remedy that perceived injustice, it attempted to nullify the judgment by legislatively restoring the case to its status before the judgment was entered. But ‘[t]he judgment of a court must stand as final. It can be reversed, modified or superseded only by judicial process. It is wholly under the control of the judicial department of government. The Legislature cannot “supersede” a judgment of a court by its direct declaration to that effect.’ Because the effect of [the statute] would be to annul the Superior Court judgment dismissing the ease, the statute is an attempt by the Legislature to exercise a power that is exclusive to the judiciary, and thus the statute violates [the separation of powers provision of the Massachusetts constitution].”
Spinelli, 393 Mass, at 242, 470 N.E.2d at 796 (citation omitted). Holding that “Manifestly it is the exercise of judicial power to grant a new trial or a rehearing in a cause in the courts,” 393 Mass, at 242, 470 N.E.2d at 796, the court further observed:
“The Legislature may, in some circumstances, provide a legislative remedy where the courts have determined there is no judicial remedy. It may not, however, instruct a court to provide a judicial remedy when that court has concluded that *1096 there is none, without violating [the separation of powers doctrine ].”
393 Mass, at 243, 470 N.E.2d at 797 (emphasis added).
The continued and unquestioned validity of the proposition that a legislature cannot order a court to reopen a final judgment and grant a new trial is further attested to by Professor Moore, in his treatise on the Federal Rules of Civil Procedure:
“The separation of powers doctrine precludes a state legislature from invading the province of the state judiciary by annulling, modifying, or impairing a final judgment rendered by a court of competent jurisdiction of that state.”
J. Moore, IB Moore’s Federal Practice ¶ 0.406[2] at 281 (2d ed.1991).
In 1869, the Sanders v. Cabaniss court surmised that the Alabama legislature may have been moved to enact a law to reopen judgments that became final during the Civil War “by their sympathies, because of the embarrassed and suffering condition of the country.” 43 Ala. at 189. I surmise that, in 1994, the Alabama legislature may have been moved to enact the Act by its indignation over the injustice of requiring a man who has scientific proof that he is not the father of a child to support that child. The Sanders v. Cabaniss court concluded, however, that “good intentions can not make an act valid, which the constitution declares void,” 43 Ala. at 189. Under our constitution, I think this court must come to the same conclusion.
Despite the fact that the separation of powers issue was not specifically raised in this case, I believe that there are two reasons why the issue should be addressed. First, it is theoretically possible to remedy the under-inclusiveness of the Act and thereby cure the equal protection flaw in the Act, by extending its benefits to the excluded classes. That course of action would be fruitless, however, if — after the extension of benefits — the Act were still fundamentally flawed.
Second, while I agree with the Alabama Supreme Court that “[njormally, a court will not hold a statute unconstitutional except on a basis specifically argued by a party and necessarily presented in the case,” Armstrong v. Roger’s Outdoor Sports, Inc., 581 So.2d at 416, I find that this case, like Armstrong, “presents a unique situation, ... because, ... [i]f the [challenged statute] violate[s] the principle of separation of powers, that violation affirmatively intrudes into the judicial process even though §§42 and 43 of the Constitution have not been argued.” 581 So.2d at 416.
“[I]t has been the firm understanding of the courts in the interpretation of the constitution that those courts which derive then-existence from the constitution, succeeding common law courts of historic origin, cannot have their functions and their orderly processes disturbed by any legislative enactment.” Ex parte Huguley Water System, 282 Ala. 633, 639, 213 So.2d 799, 805 (1968). “[S]carcely ... any function ... strikes closer to the heart of the judicial power” than the ability to grant or to deny a motion for new trial. Armstrong v. Roger’s Outdoor Sports, Inc., 581 So.2d at 418.
When the judiciary ignores the encroachment on judicial processes that the Act represents, it undermines the system of checks and balances built into our system of government. “Courts have always exercised inherent power to protect [their] adjudicatory processes, to control such processes, [and] to ward off encroachments upon recognized judicial functions.” Morgan County Comm’n v. Powell, 292 Ala. 300, 306, 293 So.2d 830, 835 (1974). Accord Agran v. Checker Taxi Co., 412 III. 145, 149, 105 N.E.2d 713, 715 (1952) (“[i]t is the undisputed duty of the court to protect its judicial powers from encroachment by legislative enactments, and thus preserve an independent judicial department”). “The concept of inherent power is not some device created by a power-hungry judiciary, but is a doctrine that is concomitant to the very structure of our tripartite form of government.” Morgan County Comm’n v. Powell, 292 Ala. at 319, 293 So.2d at 847 (Heflin, C.J., dissenting). Because I firmly befieve that “[t]hat system which best preserves the independence of each department approaches nearest to the perfection of civil government and the security of civil liberty,” Ratcliffe v. Anderson, 31 Gratt. at 107, 72 Va. at 107, I conclude that the inde- *1097 pendenee of both the legislative and the judicial departments would be advanced by holding that the Act violates the separation of powers principles underlying §§ 42 and 43 of the Alabama Constitution.
Justice Houston, dissenting in Armstrong v. Roger’s Outdoor Sports, Inc., criticized the majority for reaching a constitutional issue that had not been raised below, but even he appeared to agree that a court may reach an unpresented constitutional question “if the law is so settled that awaiting a proper constitutional challenge would be an exercise in futility.” Armstrong v. Roger’s Outdoor Sports, Inc., 581 So.2d at 428 (Houston, J., dissenting). Here, the law is settled: the legislature may not, without violating the separation of powers doctrine, order a court to reopen a final judgment and grant a new trial. Based on the foregoing authorities, I believe that the Act violates §§ 42 and 43 of the Alabama Constitution of 1901 and is, therefore, unconstitutional.