175 So. 299

**MacMAHON et al. v. BAUMHAUER et al.**

**I Div. 965.**

Supreme Court of Alabama.

May 13, 1937.

Rehearing Denied June 28, 1937.

W. O. MacMahon, pro se.

Winston F. Groom, M. F. Dozier, and Albert S. Gaston, all of Mobile, amici curiæ.

. Harry Seale, Robt. H. Smith, Armbrecht & Twitty, and Stevens, McCorvey, McLeod, Goode & Turner, all of Mobile, and Steiner, Crum & Weil, of Montgomery, for appellees.

484

BROWN, Justice.

This appeal is from the interlocutory decree of the circuit court denying appellants' motion for a temporary injunction and sustaining the demurrer of the defendants to the amended bill filed February 27, 1937. Therefore, we limit our consideration to the case as made by the averments of said bill, the intervention of Charles Otto, and the averments of the defendants' sworn answers in so far as such averments are pertinent to the questions raised by the assignments of error.

The bill is filed by a citizen and taxpayer, whose residence is connected with and supplied with water for domestic use by the water system owned and operated by the defendant City of Mobile, which use includes water for flushing into the public sanitary sewerage system, also operated and maintained by said defendant. Kimball v. North East Harbor Water Co., 107 Me. 467, 78 A. 865, 32 L.R.A.(N.S.) 805; 27 R.C.L. 1418, § 36.

The bill avers, in short, that the defendant City of Mobile, through its board of commissioners "passed an ordinance entitled 'An ordinance to amend an ordinance adopted March 26, 1936, * * * as heretofore amended and entitled: 'An ordinance *to impose rates or charges for the use and service of the sanitary sewer system of the City.*" (Italics supplied.) A copy of the ordinance is attached to and made a part of the averments of the bill, and embraces a classified schedule of rates or service charges assessed against users of said sanitary sewerage system. Such service charges are made payable monthly in advance.

Section 7 of said ordinance purports to empower the city, its agents and servants, to disconnect the sewerage system of any user from the public system, who fails to pay "the special charges levied under said ordinance" within ten days after same becomes due.

And by section 8 of said ordinance the city is empowered "to disconnect the water supply line or meter connecting the premises of any user with the water mains" where the water supplied thereby is used and discharged into the sewerage system, in the event the service charges imposed by said ordinance is not paid within ten days after the same becomes due.

That the water system and the sewerage system are operated by said defendant under separate and distinct departments and separate and distinct heads and superintendencies, and that separate and distinct contracts are required by the defendant city to obtain said two different functions and services.

That complainant's dwelling where he resides with his family is connected with and supplied by water for domestic use through defendants' said water system, that said residence is equipped with bathtubs, lavatories, sinks, etc., which are connected with and empty into the public sewerage system through complainant's sewerage connection installed on his own property.

That the defendant has furnished complainant water continuously since September, 1927, under contract made in accordance with the city's regulations, that he has paid promptly and regularly the charges for said service, and he offers to do equity, and has paid into court money to meet said charges for water supply. Notwithstanding all this, because the complainant has refused to pay said alleged service sewer charges, the said defendant city has given notice that it will, and at the filing of the bill was threatening to, and will if not enjoined therefrom, disconnect complainant's sewerage pipes leading into said public sewerage system, and for like reasons if not enjoined, will sever the complainant's water supply line and meter connections from the water system of the defendant city, thereby inflicting upon the complainant irreparable damage, converting said residence property into a nuisance dangerous to life and health, thereby taking or destroying complainant's property and property rights without due process of law.

The bill alleges facts which reasonably justified the inference that said service charges fixed by said ordinance for draining into said public sewerage system is unauthorized, unnecessary, excessive, and discriminatory; that no such charge is made by other cities in Alabama or contiguous states similarly situated; and that in levying said charge the board of commissioners of said city exceeded their power as limited by the Legislature in the acts empowering said city to acquire, construct, and maintain said sewerage system. And exceeded their power as limited by section 2121 of the Code 1923, and section 89 of the Constitution.

The bill further avers, to quote paragraph 16, thereof, "And your complainant further avers that the Respondents cannot be heard to say that the question raised in this instance is res adjudicata for that the judgment of this Court validating the ordinance, the enforcement of which this action is brought to enjoin, was and is void, in this: that under Section 3 of Act No. 106. [196] General Acts of Alabama, pages 582, 583, 584 and 585 of the General Acts of Alabama 1935, under which Act the aforesaid validation suit was brought, by virtue of the publication of notice as provided by the said Act, all taxpayers and citizens of the City of Mobile became parties defendant to said proceedings, and all three circuit judges of Mobile County were at that time and are taxpayers and citizens of the City of Mobile, and they were therefore parties defendant to the action; and your Complainant avers that one of the said circuit judges of Mobile County, to-wit, Judge Claude A. Grayson, tried the said cause and is bound by said decree; and your Complainant avers that it is a well known legal axiom that a man shall not sit in judgment in his own cause, and any judgment rendered in such instance is void."

The bill seeks to enjoin and restrain the city, its agents or servants from disconnecting the complainant's sewerage system from the public sewerage system and from disconnecting his water service pipes and meter connection from the city's waterworks system, and for general relief.

The intervener, Otto, adopts all the averments of said amended bill, and alleges further that he is a tenant of residence property on Government street in said city to which there is attingent a perpetual easement entitling said property to the use of the said public sewerage system, created by the covenants in a conveyance through which the city in 1899, acquired the properties of the "Conti Street Sewer Company," and constituted the same a part of said public sewerage system. The properties are specifically listed in the conveyance and the owners thereof named, and the rights are reserved "to the persons and their property" and it is declared therein that "the intent of this instrument being to preserve to the person therein named, and their property, and to their heirs, executors and assigns, the perpetual free use of said sewer with no liability upon them or their property to contribute hereafter toward the further building and construction or the maintenance and operation of the sewer."

Under the general laws, cities and towns are empowered to make all needful provisions for drainage, may acquire by purchase or construct and maintain sewers, and compel property owners to connect thereto and do away with surface toilets, cesspools, and sinks, and may assess the costs of the said system against the abutting property "to the extent of the increase of the value of such property by reason of the special benefits derived from such sewers or sewer systems and from the purchase of the same by the municipality." Code 1923, §§ 2076, 2081, 2083, and 2092.

And it appears that the City of Mobile has been exercising this power for upward of thirty years. Allman v. City of Mobile, 162 Ala. 226, 50 So. 238; Local Acts 1898–99, p. 895.

The Code, section 2121, provides that, "No charge shall be made for the use of said sewers or sewer system against any property assessed under the provisions of this article for the cost of the sewer, or against the owners or tenants thereof; but the council may prescribe a maximum volume of drainage for commercial or manufacturing business or plants, and make charges for such excess, or otherwise regulate the same."

Section 3 of the local law of November 30, 1898, enlarging the charter powers of the city of Mobile, under which it appears to have acquired its waterworks and system of sewerage which no doubt have been enlarged and extended under its general powers, provides: "That the said mayor and general council shall and it is hereby invested with full authority and power to make all proper regulations for preserving, maintaining, and operating such water

works and sewerage systems when established, *and to collect such rates for waters supplied* for the use of said sewerage system as shall be sufficient to pay the interest on any bonds issued by said city for the purpose of providing said water works and sewerage systems, and the expenses necessary for operating the same, and to collect *the dues for water so supplied* and used and for the use of said sewerage system, and to apply the same to the payment of such interest, provided, *that such rates shall not exceed the usual and customary rates charged by other cities, similarly situated, for like service."* (Italics supplied.) Local Acts 1898–99, p. 21. The Local Act, 1898–99, p. 895, § 2, authorized the city "to fix, and *charge such reasonable rates for the purpose of maintaining and operating* said sewerage system and *paying the interest* on the bonds issued by the City of Mobile to build said sewerage system." (Italics supplied.)

Taking as true the averments of the amended bill, and treating amendable defects apparent as amended, as required by the rule on general demurrer for want of equity and on application for injunction, aside from the defendants' sworn answer, we are of the opinion that the rulings of the court cannot be justified for want of equity in the bill. Holcomb et al. v. Forsyth, 216 Ala. 486, 113 So. 516; City of Birmingham v. Leo A. Seltzer, Inc., 229 Ala. 675, 159 So. 203; City of Mobile et al. v. Bienville Water Supply Co., 130 Ala. 379, 30 So. 445; City of Montgomery v. Greene et al., 180 Ala. 322, 60 So. 900; Sims v. Alabama Water Co., 205 Ala. 378, 87 So. 688, 28 A.L.R. 461; 27 R.C.L. page 1447 § 65; 67 C.J. 1269, § 824.

While it is well settled that a city supplying water to its inhabitants may discontinue such service for nonpayment of the water bills, however, it is also well settled that the citizen and water user may restrain such action if there is a bona fide dispute as to correctness or legality of the charge, if he offers in this bill to do equity. Sims v. Alabama Water Co., supra; 67 C.J. 1266, § 821.

And the weight of authority is to the effect that this method of enforcing payment does not apply to demands other than for water furnished. Ten Broek et al. v. Miller, 240 Mich. 667, 216 N.W. 385, 55 A.L.R. 768, and note pages 771–773.

We do not regard Francis et al. v. City of Bowling Green, 259 Ky. 525, 82 S.W. (2d) 804, as an apt authority to the question under consideration on this appeal. The scheme of construction under consideration in that case seems to have been a new enterprise inaugurated in pursuance of the "get money quick idea" and under a statute specially providing for the enterprise and the means to that end.

The ordinance involved here is to refund an existing debt contracted for a system long in use. We are of the opinion that it would be unconscionable to permit a city which had required its citizens to destroy all other sanitary equipment, and compel connection with a public sewerage system, to deny them its use although all reasonable charges for water for domestic use was paid, by assessing an extra charge for allowing the same water to flow through such sewer, and for failure to pay such extra charge, disconnect and destroy the sewerage connection, and deny water service. This would be tantamount to taking property without due process of law.

Now to consider the ruling on motion for injunction in the light of the averments of the defendants' sworn answer, as authorized by section 8305 of the Code 1923.

It appears therefrom that the appellant, MacMahon, appeared in the statutory proceedings had in the circuit court to validate the proceedings of the board of commissioners, the ordinance and the obligation, and litigated there their general validity. By his appearance he came a party and is bound by the proceedings, if they were conducted in accordance with the statute.

While the act of July 17, 1935 (Gen. Acts 1935, pp. 582–585), providing for the validation of bonds constitutes the circuit court, quoad hoc, a court of statutory and limited jurisdiction, it appears from the averments of the answer and the exhibits thereto that the statute was strictly followed.

It further appears that said complainant, MacMahon, by the averment of his bill, does not bring himself or his property within the influence of section 2121 of the Code, by alleging that his property was assessed for the purchase or construction of said sewerage system. Therefore, whether such exemptions from charges were within the scope of said statutory proceedings is not here presented. Bourjois, Inc., v. Clyde R. Chapman et al. (April 26, 1937) 57 S.Ct. 691, 81 L.Ed. ——.

But he contends that the decree entered in said proceedings is void because the judge who entered the same was a citizen and taxpayer, and therefore a party to the suit. To uphold this contention he cites the following provision of the act authorizing the validated proceeding: "By the publication of such notice all taxpayers. and citizens of such unit [meaning the City of Mobile] shall be considered as parties defendant to said proceedings and the court shall have jurisdiction of them the same as if each of them were named individually as a party defendant in said petition and personally served with process."

This court in Jeffersonian Publishing Co. v. Hilliard, 105 Ala. 576, 578, 17 So. 112, 113, speaking through Brickell, C. J., observed:

"The statute [now § 8570 of the Code 1923] has its foundation in the common-law maxim, 'nemo debet esse judex in propria sua causa,' which, it has been said, is the maxim of every country, and that 'the learned wisdom of enlightened nations, and the unlettered ideas of ruder societies, are in full accordance upon this point; and, wherever tribunals of justice have existed, all men have agreed that a judge shall never have power to decide where he is himself a party." Washington Ins. Co. v. Price, 1 Hopk. Ch. 1.

While this court has uniformly held that the fact that the judge is interested, not an actual party to the record, may be waived and is waived if the parties proceed with the trial, without objection, and that the judgment of the court is not void, but at most irregular and voidable on direct appeal, unless it appears of record that the disqualification was waived. Gulf States Steel Company v. Christison, 228 Ala. 622, 154 So. 565.

But we have never held that if the judge is a party on the record that he may sit and decide, even with the consent of the other parties, and we are not willing to destroy the wholesome doctrine, above stated, that conduces to an unbiased judgment in the administration of justice and inspires the confidence of the people in the integrity of the judiciary.

The best considered cases sustain the rule that if a judge sits in a case where he is actually a party to the record the judgment is void. 1 Black on Judgments, p. 235, § 266.

This brings us to the question, Was the judge in fact a party to the suit? The declaration in the act which we have quoted above is not controlling. It is within the competence of the Legislature to enact laws prescribing notice for judicial proceedings and how such notice may be perfected; but the question as to what constitutes due process and brings a party into court in a particular proceeding is purely juristic and beyond the scope of legislative competency. 6 R.C.L. 434, § 431; Ex parte Wilkey, 233 Ala. 375, 172 So. 111; Sanders et al. v. Cabaniss, 43 Ala. 173; Weaver et al. v. Lapsley, 43 Ala. 224.

The effect of the statute, Gen.Acts 1935, pp. 582–585, was to set up a proceeding in rem, the obligations to be issued and the ordinance being *the things* involved, the rem (1 C.J. 1041, § 171); to give each and all taxpayers an opportunity to appear and contest the general validity of such acts of the unit if they elected to do so, and if they did not come in, to set up a statutory estoppel "as to the validity of such obligations against the unit issuing them, and against *all taxpayers and citizens thereof*, and the validity of such obligations or of the tax or other means provided for their payment." (Italics supplied.) Gen.Acts 1935, p. 585, § 5; Ex parte Gudenrath (City of Huntsville v. Gudenrath), 194 Ala. 568, 69 So. 629. But such as elect not to litigate are not parties to the record. Those who do come in and litigate are concluded by the doctrine res judicata.

We are not of the opinion that this statutory estoppel was broad enough to embrace existing easements issuing out of the covenants in the conveyance between the Conti Street Sewerage Association and the City of Mobile. This conveyance created a covenant running with the land and adhering to the title thereof. White v. Harrison et al., 202 Ala. 623, 81 So. 565; 7 R.C.L. 1110, § 26.

There is not the slightest suggestion in the provisions of the act of 1935, that property rights will be adjudicated or that the status of the property of any taxpayer will be involved. 1 C.J. 1041, § 171.

Our judgment is that the court did not err in refusing the application of MacMahon for a temporary injunction.

As to the intervener, Otto, we are of the opinion that he was entitled to a temporary injunction restraining the city from disconnecting water service to him and re-

straining interference with the use of said sewer.

We are of the opinion that the decree sustaining the demurrer is free from error, for the reason that by the averments of paragraph 16, which anticipated the defendants' defense, failed to meet such defense by showing that the validation proceedings were void.

The adjudication in the decree that said validation proceedings are res judicata is premature. This question should await the final decree on the merits.

The decree of the circuit court in so far as it denies a temporary injunction to the intervener, Charles Otto, is reversed. In other respect, the decree is corrected, and, as corrected is affirmed. Let complainants have twenty days to amend the bill as they may be advised. Appellees are taxed with the costs of the appeal.

In part corrected and affirmed, and in part reversed and remanded.

KNIGHT, J., concurs in the opinion.

BOULDIN, J., concurs in the foregoing opinion, except in so far as it holds the ordinance or portions thereof invalid but for the validation proceedings. As to these matters, he expresses no opinion because, in his view, their consideration is not essential to a decision of the cause.

GARDNER, THOMAS, and FOSTER, JJ., concur as stated in the opinion of Justice THOMAS.

ANDERSON, C. J., thinks that the ratification suit was not only binding on Mac-Mahon, but on Otto and all other taxpayers, and dissents as to the reversal as to Otto.

THOMAS, Justice.

I concur in the opinion by Mr. Justice BROWN that the validation proceedings in question could not defeat the property right of user of the sewerage without charge that was reserved in the contract of sale and purchase to the city to the several owners of the original Conti system of sewerage. That free use was protected by a covenant running with the land. Patterson v. Atlantic Coast Line R. Co., 202 Ala. 583, 81 So. 85. Of this right such original owners and grantors could not be divested except by due process of law—due notice and right to defend or maintain such right of property.

The intervener, Otto, appeared in this action in order that he might protect his property as lessee and his proceeding was efficacious to protect the same and such right of those similarly situated.

That is to say, as to the right of action of Otto in this suit and as affecting the adjacent property to sewer or his grantor and the original owners of the old system—as affecting their said adjacent properties, rights, and user, such contract rights are protected by the covenant running with the land, which entitled the occupant of such property (and other owners of the Conti system whose names are set out in the bill and of a limited number) to the free use of such adjacent sewer. That property was not the rem dealt with by the act of the Legislature or proceeding thereunder, it was the bonds of the city which were made the subject thereof. And the property right of such owner or successors in the right could not in any way be involved in the proceeding in rem taken under the statute to validate the issue or issues of bonds and ordinances relating to them. Such rights could only be adjudicated and concluded by a proceeding to which such owners were parties and given a hearing that amounted to due process.

The rule of res adjudicata that obtains in this court (Crowson v. Cody, 215 Ala. 150, 110 So. 46; Stewart v. Burgin, 219 Ala. 131, 121 So. 420; Cobbs v. Norville, 227 Ala. 621, 151 So. 576; Fidelity-Phenix Fire Ins. Co. of New York v. Murphy, 231 Ala. 680, 681, 166 So. 604) is not to be applied as against Otto, his grantor, and those similarly situated.

I am further of the opinion that in the exercise of the police power, the municipality by ordinances not arbitrary or discriminatory may fix a (1) reasonable service water rate and charge, and (2) also that for the use of the sewer, that may be enforced by the usual and appropriate procedure for the collection of such charges.

I join in the reversal of the cause, and in the other respects in which the decree of the circuit court is affirmed, as stated in the opinion.

GARDNER, BOULDIN, and FOSTER, JJ., concur in the foregoing.