13 So.2d 664

**MITCHELL v. CITY OF MOBILE.**

I Div. 178.

Supreme Court of Alabama.

May 13, 1943.

Rehearing Denied June 10, 1943.

Wm. G. Caffey, of Mobile, for appellant.

Harry Seale and Robt. H. Smith, both of Mobile, for appellee.

BOULDIN, Justice.

The City of Mobile sued Joe Mitchell, appellant, on common counts to recover unpaid bills alleged to be due for water and sanitary sewer service, through a municipally owned waterworks and sanitary sewer system. The unpaid bills were for the period from February 1, 1936, to June 24, 1938.

Defendant interposed several special pleas, in bar, which, broadly speaking, challenged the validity of the rate-making ordinances on the ground that the rates were excessive and unreasonable.

Quoting from accurate statement in appellant's brief: "Plea 2 as amended averred that the plaintiff acquired its waterworks system under Local Acts 1898–99 pages 16–18, 19–21, that this Act limited the rates chargeable for water to rates sufficient only to pay the expense of operating the water-works system and interest on any bonds issued to provide such system, but that the rates imposed and applicable during the period from February 1, 1936 to June 24, 1938, were unreasonably greater than were necessary to defray the expense of operating said water works system and

to pay the interest on bonds issued for its acquisition and were so greatly excessive that the revenue derived therefrom during the period involved in this suit exceeded by thousands of dollars the amount necessary to defray the expense of operation of the system and interest on outstanding bonds."

Amended plea 12 was to like effect touching sewer rates. Apt demurrers to these pleas were overruled. The evidence, without conflict, supported their averments of fact.

The construction of the legislative acts mentioned in these pleas is fully discussed in briefs, and is so vital to a right decision touching the legal rights of the parties, we deal first with that question.

Two companion acts, passed at same session, approved on the same date, dealing with a common subject matter, appear in Local Acts 1898, page 16 and page 19, respectively. One act deals specially with the issuance of bonds of the City of Mobile, pursuant to election theretofore held, in the sum of $500,000, to acquire a waterworks system by construction or purchase, and $250,000 for a sanitary sewer system, and to mortgage such systems as security for the bonds. The other act deals specially with the construction or otherwise acquiring and operating such waterworks and sewer systems.

Section 3 of this act reads: "That the said mayor and general council shall and it is hereby invested with full authority and power to make all proper regulations for preserving, maintaining, and operating such water works and sewerage systems when established, and to collect such rates for waters supplied for the use of said sewerage system as shall be sufficient to pay the interest on any bonds issued by said city for the purpose of providing said water works and sewerage systems, and the expenses necessary for operating the same, and to collect the dues for water so supplied and used and for the use of said sewerage system, and to apply the same to the payment of such interest, provided, that such rates shall not exceed the usual and customary rates charged by other cities, similarly situated, for like service."

Without question these acts are in pari materia, to be treated as if embodied in one act.

■ Quite clearly, we think, the above authorization to fix water rates and sewer rates, to provide funds necessary for servicing the bonded indebtedness, is no limitation on the lawful rates; but, on the contrary, looks to rendering these enterprises self-liquidating projects in so far as reasonable rates would provide such funds, and thus relieve the taxpayers of the burden of such indebtedness. The sole limitation upon rates appears in these words: "such rates shall not exceed the usual and customary rates charged by other cities, similarly situated, for like service."

■ Neither this provision, nor other law in Alabama, forbids the city or town fixing rates upon municipal utilities on the same basis permitted to privately owned utilities.

■ Our general statutes vest in cities exclusive authority in the fixation of rates for city-owned utilities. Title 37, § 334, Code of 1940; Title 48, § 18, Code of 1940; Culpepper v. Phenix City, 216 Ala. 318, 113 So. 56.

■ While in the ownership and operation of a utility, the city is engaged in a proprietary enterprise; in prescribing lawful rates, the governing body acts in a legislative capacity. In both capacities, the governing body is the chosen agency of the people of the city and subject to their control through democratic processes.

■ The income from city-owned utilities is not limited to outlays for operation, maintenance, and extensions and other purposes for which they are ear-marked. Reasonable rates may be charged after the bonds for which they are ear-marked are fully paid. The income derived from reasonable rates, not ear-marked, becomes a part of the general revenues of the city, usable for general municipal purposes, unless forbidden by statute. Chamberlain v. Board of Commissioners, 243 Ala. 662, 11 So.2d 724. This is not to say rates may be fixed so as to burden utility customers with the costs of city government, public improvements, etc., thus discriminating against them; in effect imposing upon them unfair tax burdens.

■ Charges for municipal utility service have relation to the benefits received; and because of such benefits rates may be fixed to bring in a reasonable profit on the investment, based on the value of the plant as defined by law. 5 McQuillin Mun. Corp. 64, § 1948; 43 Am.Jur. 645, § 104; also p. 643, § 102; Benson v. City of Anda-

446

lusia, 240 Ala. 99, 195 So. 443. The fact that the·city authorities, having regard for the financial condition of the city, fixed these utilities rates with a view to transferring the surplus income to the general fund to help meet city obligations, and that substantial surplus funds were so transferred during the period here involved, did not render the utility rates excessive nor otherwise unlawful.'

That is not the test. Were the rates unreasonably high as measured by the standard defined by law?

No evidence was offered touching the usual rates charged in other cities under like conditions; nor was there any evidence of the value of the plants during this period. Pleas raising these issues were not proven. The evidence disclosed that in addition to the plants constructed under the Acts of 1898, the city had purchased another plant from a private utility company, and made extensions through the years.

In view of our construction of the Acts of 1898, it is unnecessary to consider whether later statutes recognizing the right to earn a profit on a city-owned sanitary sewer system is applicable here.

Nor do we commit ourselves to the proposition that, after the customer has had the benefit of utility service, he can defeat an action at law to recover the amount due under rates fixed by lawful authority, by plea in bar, and thus get free service. Rate-making is a legislative, not a judicial function. The courts cannot directly nor indirectly make rates. If rates fixed by legislative acts, orders of Public Service Commission, or municipal ordinances, are confiscatory or so greatly excessive as to violate constitutional rights, the courts have jurisdiction to so declare, and by proper orders protect the party aggrieved until lawful rates are fixed by legislative authority. The well-recognized procedure for review is by bill of injunction or by declaratory judgment proceedings wherein the complainant offers to do equity. Equity demands payment of a reasonable rate for services rendered. 43 Am.Jur. 624, § 83; 693, § 185; 695, § 186; 696, § 187; 4 McQuillin Mun.Corp. 979, 981; Hodge v. Alabama Water Co., 205 Ala. 472, 88 So. 585; Bankhead v. Sulligent, 229 Ala. 45, 155 So. 869; MacMahon v. Baumhauer, 234 Ala. 482, 175 So. 299; Benson v. City of Andalusia, supra.

Replication No. 4 sought to set up an estoppel through validation proceedings under Acts of 1935, page 582, Code 1940, Tit. 7, § 169 et seq., wherein the court by decree validated a refunding ordinance covering sundry bond issues of the City of Mobile, and the sources of payment of such bonded indebtedness, including some funds to be allocated from water and sewer funds. This proceeding was considered in MacMahon v. Baumhauer, supra.

The water rates of the city were fixed by ordinance in force prior to 1936; the sewer rates by ordinance early in 1936. The validation proceedings were in 1936, the validating decree rendered in June of that year.

This decree found and decreed that the existing water and sewer rates were lawful and reasonable; but expressly limited the finding in that regard to the time of the rendition of the decree, and expressly decreed that such finding should not apply to rates for the future. Quite properly the court did not undertake to freeze the rates then in force, denying to the city the legislative power to readjust future rates, etc. Passing over any question of the sufficiency of the replication, as against demurrer, the validating decree, by its terms, created no estoppel as to future rates, running into 1938. Granting it was conclusive as a proceeding in rem touching present rates, and the allocation of funds from this source to service the refunding bonds, and such rates would presumably continue to be reasonable and lawful until re-adjusted, or until change of conditions rendered them clearly unreasonable and unlawful, the replication does not present such issues. We must hold the estoppel set up by the replication was not sustained by the validating decree.

To prove the amount due for water and sewer service to some 100 pieces of defendant's property during the period named in the complaint, plaintiff introduced ledger sheets disclosing accounts charging defendant with items from month to month.

The testimony of the chief clerk in the waterworks department disclosed he was such chief clerk during the whole period; that these ledger sheets constituted the records of that department, kept in regular course of business, were the original permanent records showing charges for water and sewer service; that the city had five meter-readers, who read the meters from month to month, turned in reports of such readings, and from these some

twelve clerks in the department worked out and entered the charges on the ledger sheets. The witness disclaimed any personal knowledge of the correctness of the meter readings, the reports thereof, or the correctness of the various entries, but testified that he supervised and checked from time to time as chief clerk.

 In construing Title 7, § 414, Subd. 3, Code of 1940, we have held the requirement that the witness shall depose the entries in books of original entry "are true and just," is met by deposing that they are books of original entry, kept in regular course of business, and correct on information and belief, or his testimony is reasonably to be so understood. Booker v. Benson Hardware Co., 216 Ala. 398, 113 So. 256; Denson v. Kirkpatrick Drilling Co., 225 Ala. 473, 144 So. 86; Dean v. Thames, 234 Ala. 388, 175 So. 257.

Subd. 4 of same section deals with books of original entry made up from sales tickets. It requires the bookkeeper transcribing such entries to testify they were correctly transcribed.

Deeming these statutes inadequate to the needs of present day business, an additional section was added in the Code of 1940, which reads: "§ 415. Business entries.— Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible in evidence in proof of said act, transaction, or event, if it was made in the regular course of any business, and it was the regular course of the business to make such memorandum or record at the time of such act, transaction, occurrence, or event, or within a reasonable time thereafter. All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but they shall not affect its admissibility. The term, 'business' shall include business, profession, occupation, and calling of every kind."

We are of the opinion that the ledger sheets, upon preliminary proof by the testimony of the chief clerk, were admissible as prima facie evidence under the broad coverage of above section. There was no evidence questioning the correctness of these charges, or the liability of defendant therefor.

The cause was tried without a jury. While the rulings on pleadings were not in entire harmony with the judgment rendered by the court, we think the judgment for plaintiff was correct. It may be referred to the complainant and plea of the general issue, the controlling issue in the case. It appears, however, an error in calculation resulted in a judgment somewhat excessive. Counsel for the city have taken the time and labor to work out a statement, showing sum due to be $7,210.94, instead of $7,784.51, the amount of the judgment.

The judgment will be here corrected by reducing same to $7,210.94, as of July 10, 1942, the date of the judgment. As thus corrected the judgment is affirmed.

Let cost of appeal tax one-half to each party.

Corrected and affirmed.

GARDNER, C. J., and FOSTER and LAWSON, JJ., concur.