I respectfully dissent from that portion of the majority's opinion regarding the appropriate standard of review. I would treat that issue thusly:
Durbin contends, in brief, that certain significant distinctions between the Board and the APSC are relevant to the standard of review issue:
 "First, the APSC establishes or approves the rates to be charged by a regulated utility. The Jasper Board establishes its own rates. Second, a regulated utility is required, by statute, to charge the rates established by the APSC. The Board charges whatever rates it promulgates and can change those rates at will. Third, a regulated utility must charge the rates established by the APSC until the APSC, through its own action or through judicial review, modifies that rate schedule. As stated, the Board can, at will and with no restraint, modify and increase rate schedules at any time.
". . . .
 "In contrast with an unregulated utility, the Alabama legislature has enacted specific provisions[1]
with regard to grievances by both the utility or a consumer when a utility is regulated by the APSC. . ..
". . . .
 "Therefore a distinction of paramount importance between regulated and unregulated utilities is the fact that the consumers of an unregulated utility have no statutory protection from unreasonable and unlawful rates."
Although I agree with Durbin's contention that differences between a municipal utility board and the APSC warrant application of a broader standard of review by the trial court, my rationale and focus in reaching this conclusion are somewhat different from those espoused by Durbin. Unlike the APSC, a municipal utility board does not stand in an impartial position to judge the fairness and validity of the very rates it sets. When the Supreme Court, as *Page 1029 
a court of initial appellate jurisdiction under our direct appeal statute,[2] reviews rate orders of the APSC, it is reviewing orders of a quasi-judicial body that stands independent from the provider of the service and in the position of an impartial arbiter between ratepayers and ratechargers.
Conversely, when a circuit court, as a court of initial jurisdiction, reviews the propriety of rates set by a municipality, it is not reviewing the decision of an independent, impartial arbiter of rate schedules. Therefore, the same presumption of correctness afforded the APSC's order pursuant to Code 1975, § 37-1-124, should not apply to an order of a municipal board serving in the dual capacity as provider of the services and as judge of the fairness of the rates charged for such services.
Our cases, to be sure, stand for the proposition that a municipal utility board can, in effect, wear two hats — that is, set utility rates, as does the APSC, while operating the utility as a proprietary enterprise. See Mitchell v. City ofMobile, 244 Ala. 442, 13 So.2d 664 (1943). But, on close analysis, one finds what is referred to as the board'sjurisdiction, or authority, to perform both functions. Municipal utility boards are created pursuant to legislative authority, and are statutorily authorized "[t]o fix and revise from time to time and charge and collect rates, fees, and charges for the use of or for the services and facilities furnished by any system operated by the board." Code 1975, §11-50-343 (a)(8). In exercising this statutorily prescribed authority, the board performs a public function, acting as a ratemaking body, while at the same time performing a proprietary function as owner and operator of the utility.
In Mitchell, supra, the Court discussed the role of municipal rate-making bodies:
 "Neither this provision, nor other law in Alabama, forbids the city or town fixing rates upon municipal utilities on the same basis permitted to privately owned utilities.
". . . .
 "While in the ownership and operation of a utility, the city is engaged in a proprietary enterprise; in prescribing lawful rates, the governing body acts in a legislative capacity. In both capacities, the governing body is the chosen agency of the people of the city and subject to their control through democratic processes." 244 Ala. at 445, 13 So.2d 664.
Concerning judicial review, Mitchell further stated:
 "Rate-making is a legislative, not a judicial function. The Courts cannot directly nor indirectly make rates. If rates fixed by legislative acts, orders of Public Service Commission, or municipal ordinances, are confiscatory or so greatly excessive as to violate constitutional rights, the courts have jurisdiction to so declare, and by proper orders protect the party aggrieved until lawful rates are fixed by legislative authority." 244 Ala. at 446, 13 So.2d 664.
It is one thing to say that a municipal utility board, acting in its legislative capacity, apart from its proprietary function of providing the utility services, has authority to set rates for those services. When the fairness of these rates is challenged, however, it is quite a different thing to say that, because of this authority, the board is able to impartially judge the fairness and validity of its self-imposed rates, and thereby entitle the board's findings to a presumption of correctness.
I would hold that the trial court, in order to satisfy minimal due process guarantees, must exercise a broad standard of review when examining the legal validity of rates imposed by a municipal utility board, and must accord no presumption of correctness to the board's order resulting from a contest of the rates fixed by the board. No citation of authority is necessary to support the elementary proposition that fundamental substantive due process is lacking where the findings of the very entity that provides the utility services are accorded a presumption of correctness by the reviewing court. Because there is no statutorily created independent *Page 1030 
dispute-resolving agency with quasi-judicial authority, the initial reviewing court, according to constitutional due process mandates, must provide a de novo hearing. The conventional presumption of correctness will be accorded the trial court's findings of fact, of course, when reviewed by an appellate court.
To summarize, I do not quarrel with the majority's position that the utility board exercises a legislative function in setting rates for utility services. My quarrel with the majority centers around its failure to recognize the distinction between the Board's rate-setting prerogative and its quasi-judicial function of testing the fairness of those rates when challenged by a ratepayer. Fundamental due process guarantees mandate that, when a utility board exercises this quasi-judicial function, the findings of that board cannot be accorded a presumption of correctness, but, instead, are subject to a de novo review by the court of initial jurisdiction.
I now turn to the issue whether this review standard, compelled by reason and logic, was applied by the trial court. The trial judge's final order, quoted in the majority opinion, clearly shows the judge misconstrued his role in the review process, and utilized an incorrect, overly-narrow scope of review in his examination of the evidence. For this reason, I would remand this cause to the trial court for further findings consistent with the broader standard of review I have urged in this dissent.
Any discussion of other issues addressed by the majority would be premature at this time. I would retain jurisdiction, however, to decide these and other issues that may arise after the trial court's disposition of this case in conformity with the principles I have previously discussed. Accordingly, I would remand this cause for further proceedings, with or without further evidentiary hearings in the discretion of the trial court.
[1] See § 37-1-120, et seq.
[2] Code 1975, § 37-1-140.