115 So.2d 519

#### Woodley C. CAMPBELL

#### v.

#### WATER WORKS AND SANITARY SEWER BOARD OF the CITY OF MONTGOMERY.

#### 3 Div. 891.

Supreme Court of Alabama.

Nov. 5, 1959.

Woodley C. Campbell and Azar & Campbell, Montgomery, for appellant.

STAKELY, Justice.

This is an appeal from a decree of the Circuit Court of Montgomery County, in Equity, validating proposed water and sewer system revenue bonds of the Water Works and Sanitary Sewer Board of the City of Montgomery.

The Water Works and Sanitary Sewer Board of the City of Montgomery brought a statutory action in the Circuit Court of Montgomery County, in Equity, for validation of $10,000,000 in water and sewer system revenue bonds which it proposes to issue. General Acts 1953, pp. 1148 et seq.; § 359(8) et seq., p. 247, Title 37, 1955 Cumulative Pocket Part, Code of 1940; § 394 et seq., p. 254 et seq., Title 37, 1955 Cumulative Pocket Part, Code of 1940.

The court set the matter for hearing and notice to the taxpayers and citizens of the City of Montgomery was published as re-

Jones, Murray & Stewart, Montgomery, for appellee.

quired by the statute and a copy of the notice was served on the solicitor also as required by the statute. Woodley C. Campbell filed a petition to intervene. The court granted the petition and allowed Woodley C. Campbell to intervene as a respondent since he was a taxpayer and a resident citizen of the City of Montgomery. Because the board proposed to combine the water and sewer systems into one water and sewer system and to pledge water revenues only as security for the proposed bonds, the court required further notice to all citizens of the City of Montgomery who claimed any exemption from sewer charges. The board gave such further notice as was required by the court.

Prior to hearing the petition of the board the court consolidated with this cause suit No. 37321 pending in the Circuit Court of Montgomery County, in Equity, seeking a refund of sewer service charges styled Dalrymple v. Water Works and Sanitary Sewer Board et al., and approved a settlement by the board and the class or group claiming refunds of past sewer charges and continued exemption from sewer charges in the future. By the terms of this settlement, past charges will be refunded and any claim for future exemptions will be abandoned and barred.

The court then heard evidence on the petition for the validation of the proposed bonds issued by the Water Works and Sanitary Sewer Board of the City of Montgomery. Silas D. Cater, Secretary of the Board, testified as to its organization, its acquisition from the City of Montgomery of the water system and the acquisition later from the City of Montgomery of the sewer system. He further testified to the adoption of a resolution combining the two systems and authorizing the issuance of $10,000,000 water and sewer revenue bonds for the payment of which the water revenues of the board were to be pledged. The amount due on January 1, 1960, for water bonds issued by the board amounts to $6,130,175 and the amount due on January 1, 1960, for sewer bonds amounts to $2,650,750, totaling $8,-

780,925. The balance of $1,219,075 is to be used for the maintenance of the two systems.

Charles Smith, the Comptroller of the Board testified to the present operation of the two separate systems and to the savings in overhead and maintenance which would result from combining both systems into one system and substituting a single charge for water for the separate charges for water and sewer services now in use.

Experts in the field of municipal financing and engineering testified to the present and future needs for expanded water and sewer facilities and the means of financing operation and expansion, including refinancing of existing water bonds and sewer bonds and debt servicing for the proposed water and sewer system revenue bonds.

The Board's witnesses further testified that the proposed single charge for water was reasonable, that it was equal to or less than that of many other cities of comparable size and that the rate would be equitable and uniform for all classes of customers.

The court validated the proposed bonds and approved all proceedings in connection therewith by decree made and entered September 28, 1959.

From this decree Woodley C. Campbell, the intervenor, representing citizens and taxpayers of the City of Montgomery, has taken this appeal.

I. In the resolution adopted by the board it was alleged and in the decree of the court it was held that the proposed bonds are to be the special obligation of the Water Works and Sanitary Sewer Board of the City of Montgomery and shall be payable solely from the water revenues pledged by the resolution to the payment of the bonds and interest thereon and are not to be a debt of the City of Montgomery within the meaning of the Constitution of Alabama of 1901 and the City of Montgomery is not to be liable thereon and further that all debts created by the proposed bonds are solely and ex-

clusively the obligation of the aforesaid board, do not constitute the creation of a debt of the City of Montgomery and the faith and credit of the City of Montgomery is not pledged for the payment of the bonds or the interest thereon.

The resolution authorizing the proposed $10,000,000 Water and Sewer System Revenue Bonds provides (1) that the bonds shall be payable solely from the revenue derived by the board "from the sale of water furnished or supplied by the water system" operated by the board, and (2) pledges such revenues to the payment of the bonds and, in addition (3) covenants that the board shall charge and collect "reasonable rates for the sale of water" and such rates shall be equitable and uniform for all classes of customers and (4) covenants that such rates so charged "shall be sufficient at all times to provide the funds needed to operate the board's water and sewer systems and to maintain the same in good repair and good operating condition and to pay the principal and interest on such bonds as the same shall become due and payable and to maintain such reserve as may be deemed appropriate for the protection of the bonds and the efficient operation of the water and sewer systems."

These provisions contained in the resolution authorizing the bonds are fully authorized by Act No. 175, p. 416, Acts of 1951 of Alabama, which is recited as authority for the adoption of the resolution. See § 394 et seq., Title 37, 1955 Cumulative Pocket Part, Code of 1940. Section 4 of the aforesaid act [§ 402(18), Title 37, 1955 Cumulative Pocket Part, Code of 1940], authorizes the board "to borrow money for any corporate function, use or purpose, and to issue in evidence of the borrowing interest bearing bonds payable solely from the revenues derived from the operation of any one or more of its systems (regardless of the system or systems for the benefit of or with respect to which such borrowing may be made)."

Section 6 of the aforesaid act [§ 402(20), Title 37, 1955 Cumulative Pocket Part, Code of 1940], provides that when the board shall have "issued its bonds payable from the revenues of its system or systems, it shall charge, collect and account for revenues from the operation of such system or systems sufficient to pay the principal of and interest on said bonds as such principal and interest respectively mature, to pay the cost of operating and maintaining such system or systems and to create and maintain any reserves or special funds which may be provided for in the proceedings authorizing the issuance of the bonds."

▮ Under the circumstances the only questions raised on this appeal are (1) whether the board may set its rates sufficiently high to operate and expand its combined systems and service its debts or, in other words, may make a profit on the sale of water and use that profit for all of its legal corporate purposes and (2) whether the proposed single charge for water discriminates against any person who is exempt from sewer charges or who has no sewer charges.

There is no express provision in the Constitution of Alabama which regulates the charges to be made by a public corporation for service by one of its utilities. However this court in Benson v. City of Andalusia, 240 Ala. 99, 195 So. 443, 445, has indicated that such charges must not be "arbitrary or discriminatory" and must be "reasonable". Also in Mitchell v. City of Mobile, 244 Ala. 442, 13 So.2d 664, 667, this court has expressed the opinion that such charges must not be "confiscatory or so greatly excessive as to violate constitutional rights." Accordingly, it seems to us that we should consider what tests shall be used in applying such rules. These tests are not indicated in any decision of this court so far as we can ascertain.

It seems clear to us that charges made for water would not be unreasonable, confiscatory or excessive merely because the charges made ·are in excess of those required to finance the cost of maintaining the water system supplying the water. In the

case of Mitchell v. City of Mobile, supra, this court said:

"Charges for municipal utility service have relation to the benefits received; and because of such benefits rates may be fixed to bring in a reasonable profit on the investment, based on the value of the plant as defined by law. 5 McQuillin Mun.Corp. 64, § 1948; 43 Am.Jur. 645, § 104; also, p. 643, § 102; Benson v. City of Andalusia, 240 Ala. 99, 195 So. 443. The fact that the city authorities, having regard for the financial condition of the city, fixed these utilities rates with a view to transferring the surplus income to the general fund to help meet city obligations, and that substantial surplus funds were so transferred during the period here involved, did not render the utility rates excessive nor otherwise unlawful."

The views expressed in the Mitchell case, supra, are in accordance with those held by the highest courts in several states.

In Alford v. City of Eatonton, 174 Ga. 169, 162 S.E. 495, 496, the court refused to enjoin the collection of charges for water and in doing so stated that the city might operate its water works system "for such profit as may be, in the judgment of the municipal authorities, right and proper in the conduct of the municipal affairs of the city." In City of Bayonne v. North Jersey District Water Supply Commission, 30 N.J.Super. 409, 105 A.2d 19, 26, the court held that the "reasonable value of water sold may properly return to the municipalities making the sale, something by way of profit."

In City of Newport News v. Warwick County, 159 Va. 571, 166 S.E. 570, 579, 167 S.E. 583, the Virginia Supreme Court had occasion to consider whether the City of Newport News could charge for water at a rate which would produce a profit. It held that there was nothing in either the act which authorized the city to operate a water system or in the Virginia Constitution which prevented the city from "deriving a beneficial profit from the proceeds of its water works."

In Shirk v. City of Lancaster, 313 Pa. 158, 169 A. 557, 563, 90 A.L.R. 688, the Pennsylvania Supreme Court held that the courts, in regulating rates for the sale of water by a city under authority given by the legislature, should not deprive the city from making a profit in its water business provided the profit is not "for manifestly unreasonable discrimination or preference in the tax burdens."

Accordingly we affirm the decree of the lower court in holding that the charges made for water are not unreasonable or confiscatory or excessive.

II. This brings us to the question of whether the proposed single charge for water is reasonable, equitable and uniform as to those customers who are exempt from sewer charges by deed, contract or otherwise and as to those who receive no sewer services. It is suggested by the appellant that charging water rates as required by the resolution is unreasonable, arbitrary and discriminatory because the surplus is to be used to finance the board's sewer system and that there are residents of the city who will be required to pay water charges but who receive no service from the sewer system or who are exempt from the sewer charges. However, we consider that since the board has the right to charge rates which will create a "surplus", then it necessarily follows that the surplus which will not be needed for the maintenance of the water system can be used for other corporate purposes, such as the maintenance of its sewer system. We point out that the thought that the surplus must be used only to finance functions which are of equal benefit both to those who pay for water and those who do not, is not suggested either in the Mitchell case, supra, or in the Benson case, supra. There is no suggestion in the Benson case, supra, that the City of Andalusia would be re-

quired to spend the revenue derived from the sewer charge in such manner as equally to benefit every person in the city. In the Mitchell case, supra, there is no suggestion that the City of Mobile is restricted in any manner in the expenditure of surplus derived from its water system. We have been unable to ascertain any decision by this court which presents the particular question now before us. The identical question, however, was considered by the Supreme Court of Georgia in Reed v. City of Smyrna, 201 Ga. 228, 39 S.E.2d 668, in which it was held that persons charged for water furnished by the city could not complain because the surplus revenue derived therefrom was to be used for the maintenance of a sewer system and the person complaining made no use of the sewer system.

According to our understanding, the City of Montgomery operated a water system long before it had a sewer system. Gradually sewers were installed and were in most cases paid for and maintained by the city. Those who were exempt from sewer charges and those who were not served by sewers paid the same charges for water. There appears to have been no feeling then that the rate was not reasonable, equitable or uniform. It was only after the board adopted a separately stated sewer charge and now proposes to drop this charge and return to the old system of a single charge for water that appellant feels that the single charge is no longer reasonable, equitable or uniform. The rate which is paid for any utility may be used to provide some type of service which the particular user does not receive. The test of a reasonable, equitable or uniform rate is not what is to be done with the surplus it produces over and above the immediate needs but whether it applies alike to all whom it serves. In this case do all the consumers of water pay for it at a reasonable, equitable or uniform rate? We think so.

In considering carefully the testimony and record in this case we conclude that the decree of the lower court in validating the proposed bonds should be upheld.

The decree of the lower court is affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.