662 So.2d 251 (1995)
BOARD OF WATER AND SEWER COMMISSIONERS OF the CITY OF MOBILE
v.
Walter V. YARBROUGH.
1931244.
Supreme Court of Alabama.
May 19, 1995.
Joe H. Little, Jr., Mobile, and J.M. Druhan and D. Charles Holtz, Mobile, for Appellant.
James E. Atchison and Mona A. Vivar, Mobile, for Appellee.
BUTTS, Justice.
This Court granted the Rule 5, Ala.R.App. P., petition of the Board of Water and Sewer Commissioners of the City of Mobile (hereinafter the "Board") for permission to appeal *252 the circuit court's denial of its motion for a summary judgment in an action against the Board filed by Walter V. Yarbrough, a resident of Mobile and a customer of the Board.
The Board provides water and sewer service to customers within the Mobile city limits and to customers in some areas outside the city limits. On August 20, 1993, Yarbrough filed an action against the Board, on behalf of himself and all other members of a class of persons who had been paying for, but not receiving, the Board's sewer service. Yarbrough sought an injunction to prevent the Board from continuing to charge him and other members of the class for sewer service and sought a refund for the charges they had paid in the past. Although the lawsuit was brought as a class action, it was never certified as such by the circuit court.
On December 17, 1993, the Board moved for a summary judgment, which the circuit court denied on May 27, 1994.

I.
In 1952, the Board was incorporated as a public corporation pursuant to the predecessor of Ala.Code 1975, § 11-50-340, and in that year it began to operate the City of Mobile's existing water and sewer systems within the city limits and in some of the surrounding areas. On March 8, 1954, the Board adopted a resolution combining the water system and the sewer system as a single system for the purposes of operation and financing. The Board noted that raw sewage was being emptied into Mobile Bay and other public waterways and that both the sewer system and the water treatment facilities needed to be expanded and upgraded. The resolution also authorized the Board to continue the city's practice of charging a rate for its services based on the customer's water usage, termed a "water rate." There was no separate charge for sewer service, whether the customer actually used the sewer system or not. The proceeds collected from the water rate were used to defer the costs of both the water service and the sewer service provided by the single system. The Board did not set a different water rate for those customers outside the city limits to which it provided only water service; the Board stated in its resolution that because of the increased cost of supplying water outside the city limits, the uniform water rate was equitable.
On March 21, 1966, the Board adopted another major resolution affecting its operations. The new resolution incorporated much of the text of the 1954 resolution. However, the Board increased its service charges and renamed the "water rate," calling it the "combined water and sewer rate." Like the water rate, the "combined rate" for water and sewer service was based solely on water usage. The resolution also noted that the Board treated 40% of its revenue derived from the combined rate as revenue attributable to the sewer system. The resolution set a rate for water usage for customers outside the city limits at levels higher than the combined rate and also set a separate sewer service charge for those customers where sewer service was available.
The Board, on August 3, 1970, adopted another comprehensive resolution updating the rules controlling its operations. The Board increased its combined rate for customers within the city limits and, for the first time, identified within the combined rate an exact rate for water service, including state and local taxes on that service, and another rate for sewer service, which was not taxed. The Board continued to apply the combined rate on the basis of its customers' water usage. The manner in which the Board's customers outside the city limits were billed for water and sewage system usage remained the same.
On November 24, 1975, the Board again adopted a comprehensive resolution updating its rules. With regard to the issues of this lawsuit, the resolution merely increased the Board's combined rate; it did not change the manner in which that rate was to be applied on the basis of water usage. The Board adopted another resolution increasing the Board's combined rate, on August 4, 1986. Again, the manner in which the combined rate was to be applied was not changed.
However, in August 1993, the Board stopped applying the combined rate to its customers within the city limits and began *253 applying a billing rate to water customers that did not reflect the added cost of operating the sewer system. The Board's sewer system customers were charged a separate rate for sewer service. However, the Board's water-only customers were charged a flat monthly fee relating to the sewer system in addition to the rate for the water use. Yarbrough states that he is now charged $6.87 per month for sewer service, even though his residence is not connected to the city's sewer system.
Yarbrough has resided at the same address in Mobile since 1967. When he purchased the house, it was located outside the city limits and the city's sewer system did not extend to that area. Even though Yarbrough's house is now within the city limits and the sewer system has been extended to that area, the house is still connected to a septic tank rather than to the sewer system. Yarbrough states that once the city limits expanded in the late 1980's to include his residence, his water bills "doubled or tripled" even though he was using only water and not the city's sewer system. He claims that he complained to a representative of the Board, but was informed that he had to pay the combined rate for water and sewer service. Yarbrough claims that he also complained to the Board in August 1993, when his bills began showing separate charges for the water and sewer systems, complaining that he was also being charged a flat fee relating to the sewer system, even though his house was not connected to it. However, there is no evidence in the record that Yarbrough ever made the Board aware, before August 1993, that he was paying his utility bills under protest.

II.
There are two issues involved in this appeal. The first issue is whether the Board was authorized to charge customers within the Mobile city limits a "combined rate" for water and sewer service based solely on the amount of water usage, regardless of whether the customer received sewer service. Yarbrough claims that the Board's prior practice of charging a combined rate to water customers within the city limits who did not receive sewer service violates Ala.Code 1975, § 11-50-351(b), which states that rates, fees, and charges for the use of services provided by the water or sewer system "shall be just and equitable." His complaint questioned "the right of the Mobile Water System to charge the members of the class for services it did not provide" to the class.
The Board contends that its historical use of a combined rate based on water usage as a means to finance the operations and maintenance of both its water and sewer systems is expressly authorized by § 11-50-351 and this Court's opinion in Campbell v. Water Works & Sanitary Sewer Board of the City of Montgomery, 270 Ala. 33, 115 So.2d 519 (1959). First, the Board argues that § 11-50-351 authorizes it to use any of several different methods to charge for its services, including a rate reduction to customers where sewer services are not provided, but it argues that that Code section does not mandate such a billing method. The Board also contends that the Campbell holding clearly allows it to charge a rate for water service that will provide enough surplus revenue to maintain its sewer system. Finally, it argues that although Yarbrough's house is connected to a septic tank rather than to the city's sewer system, Yarbrough should not be allowed to deny that he enjoys the benefits of the healthier environment created as a result of the city's operation of a sewer system.
We agree with the Board that Campbell is dispositive of this issue. In Campbell, this Court faced the same issues raised now by Yarbrough, which were then phrased:
"(1) whether the board may set its [water] rates sufficiently high to operate and expand its combined systems and service its debts or, in other words, may make a profit on the sale of water and use that profit for all its legal corporate purposes and (2) whether the proposed single [combined] charge for water discriminates against any person who is exempt from sewer charges or who has no sewer charges."
270 Ala. at 36, 115 So.2d at 522. In Campbell, we noted that in Mitchell v. City of Mobile, 244 Ala. 442, 13 So.2d 664 (1943), this Court had held that a municipal utility board *254 had the authority to set its rates so as to create a surplus. 270 Ala. at 37, 115 So.2d at 522. The Campbell Court then stated that "the surplus which will not be needed for the maintenance of the water system can be used for other corporate purposes, such as the maintenance of its sewer system." 270 Ala. at 37, 115 So.2d at 523. Finally, the Court concluded that the surplus created need not be spent in a manner that equally benefits every person in the city, and it held that "[t]he rate which is paid for any utility may be used to provide some type of service which the particular user does not receive." 270 Ala. at 38, 115 So.2d at 524. That holding is applicable here.
Moreover, although Yarbrough's house is not connected to the city's sewer system and, thus, he did not receive the same direct benefit as others for the additional fee he paid during the Board's use of the combined rate billing method, he did receive an important indirect benefit. As noted in the Board's resolutions, it has spent large sums of money to continuously expand and upgrade the sewer system in order to prevent the spread of pollution and pestilence. We agree with the following statement in the Board's 1954 resolution:
"The citizens of the City of Mobile and environs, including those within the police jurisdiction and served by the water system, are directly or indirectly affected by the results of the pollution of [public] waters and the beneficial results to be obtained by the elimination of the pollution will be a public benefit to the entire community and citizens thereof."
(Emphasis added.)
Yarbrough responds by arguing that the critical language in Campbell is not that the Board is authorized to charge a rate for water that will create a revenue surplus available to pay for other services, but that all the customers of the water system must pay a "reasonable, equitable or uniform rate." 270 Ala. at 38, 115 So.2d at 524. He argues that it is not equitable for the Board to charge water customers within the city whose residences are not connected to the sewer system, such as him, a sewer-related fee, while not charging a sewer-related fee to similar, water-only customers outside the city.
Yarbrough fails to note, however, that the Board's water-only customers outside the city limits have historically paid a water rate higher than the combined rate charged to customers inside the city limits. This higher rate charged to water customers outside the city limits is a reflection of the fact that although the city may have a duty based on its police powers to provide a source of treated and purified water to its residents, it does not owe such a duty to persons outside the city limits, to whom providing such a service greatly increases its costs. Similarly, because a municipality has the authority under its police powers to control sanitary matters within its limits by operating a sewer system, it has the corresponding authority to generate sufficient revenues from its residents, the persons who benefit from it most, to carry out its undertaking to operate a sewer system. Moreover, the rate historically charged by the Board to water and sewer service customers outside the city limits has also been much higher than the combined rate paid by city residents; that fact is a reflection of the increased costs.
We conclude that the Board's historical practice of charging a combined rate based on water usage, to all its customers inside the city, both water and sewer customers and water-only customers, is not contrary to law. See Campbell, supra; Marshall Durbin & Co. of Jasper, Inc. v. Jasper Utilities Board of the City of Jasper, 437 So.2d 1014 (Ala. 1983). We also hold that its practice of not charging water-only customers outside the city a combined rate, which it charges its water-only customers inside the city limits, is not unreasonable or inequitable.

III.
In August 1993, the Board stopped charging its customers a combined rate based on water usage and began charging them separately for water and sewer use, charging water-only customers like Yarbrough an additional flat fee related to operation and maintenance of the sewer system. Thus, the second issue raised by Yarbrough's complaint is whether the Board is authorized *255 to continue its current billing practice. Yarbrough argues that because his house is not connected to the sewer system, the Board has no authority to charge him a fee of $6.87 per month relating to the maintenance of that utility system.
We find little distinction between the Board's historical practice of charging a combined rate based solely on water usage, which created a revenue surplus sufficient to maintain the sewer system, and the Board's current billing practice toward city residents. Although the distinctly separate flat fee for the sewer system being charged to water-only users more clearly reveals to those customers that they are being charged for a service they do not receive a direct benefit from, we have already noted the substantial indirect benefit provided to all city residents by the Board's operation of a sewer service. Thus, we do not find it contrary to law for the Board to charge water-only customers within the Mobile city limits a monthly fee used to assist in providing the revenue necessary to operate the Board's sewer system.

IV.
The circuit court should have granted the Board's motion for a summary judgment. We reverse the order denying that motion, and we remand this case for the circuit court to enter a summary judgment in favor of the Board.
REVERSED AND REMANDED.
MADDOX, ALMON, SHORES, KENNEDY and COOK, JJ., concur.
HOUSTON, J., concurs in the result in part and dissents in part.
HOUSTON, Justice (concurring in the result in part and dissenting in part).
In my opinion, there is a genuine issue of material fact that must be resolved. Is the $6.87 flat monthly fee for sewerage, when assessed against one who receives no sewerage service, "just and equitable," as Ala.Code 1975, § 11-50-351(b), requires? I do not believe that the appeal from the ore tenus bond validation in Campbell v. Water Works & Sanitary Sewer Board of the City of Montgomery, 270 Ala. 33, 115 So.2d 519 (1959), answered this question as a matter of law.