This appeal is from a summary judgment entered in favor of the defendants. It involves the constitutionality of an act of the Legislature relating to the discharge of storm waters in Jefferson County and municipalities located therein or partially therein.
The specific legal issues presented are (1) whether Act No. 95-775, Ala. Acts 1995, codified at § 11-89C-1 et seq., Ala. *Page 846 
Code 1975 ("the Storm Water Act"), is a local act that was not properly advertised, (2) whether the codification of the Act into the Code by the Legislature had the effect of making it a general act, and (3) whether the storm-water fees authorized by Jefferson County Ordinance No. 97-1532, adopted pursuant to the provisions of the Act, amount to an unconstitutional levy.
After carefully reviewing the law relating to the effect codification of a statute has on the classification of a law as being "general" or "local," we conclude that the trial court properly entered the summary judgment in favor of the defendants as to this issue. Furthermore, after reviewing the methodology used to implement the Act, as shown by the record before us, we conclude that the summary judgment was proper as to this issue also. Consequently, we affirm.
 I.
The Storm Water Act was adopted by the Legislature in 1995. In the preamble to the Act, the Legislature stated, in pertinent part:
 "(a) The Legislature finds and declares that it is in the public interest and the health, safety, and welfare of the citizens of this state and within the police power of the state, county, and municipal governments to promote effective and efficient compliance with federal and state laws, rules, regulations, and municipal permits relating to storm water discharges into municipal separate storm sewers, and to promote and authorize the discovery, control, and elimination, wherever practicable, of that discharge at the local government level.
 "(b) It is the intention of the Legislature by passage of this chapter to assist the state in its implementation of the storm water laws, and to supplement the authority of the governing bodies of all counties and municipalities in the state to enable them to implement the storm water laws.
 "(c) It is further the intention of the Legislature to authorize and promote the intercooperation of the governing bodies in implementing the storm water laws and the purposes of this chapter.
 "(d) It is further the intention of the Legislature to authorize governing bodies to determine the methods and procedures they shall use to carry out the storm water laws and this chapter, to make their respective participation in a public corporation intercooperation program optional, and to adopt policies and procedures pertaining to their responsibilities in the program and the procedure for entry into and exit from the program. It is the intention of the Legislature to grant the governing bodies, whether in the program or acting individually, the enforcement authority needed in order to satisfy the requirements of storm water laws, further, to act by resolution or ordinance enforceable in their respective municipal courts or the district courts and by civil procedures in district and circuit courts, including fines, penalties, damages, and injunction as authorized and appropriate. It is the intention of the Legislature to grant governing bodies the authority to determine their financial needs to fund the administration, operations, and projects of the program, their individual needs, and the methods to generate and collect the necessary revenue and to authorize the use of the assessment, billing, and collection capabilities and authority of the respective county tax assessors and tax collectors for that purpose."
§ 11-89C-1, Ala. Code 1975.
Section 11-89C-2 defined, in pertinent part, the term "governing body": *Page 847 
 "(1) Governing body. The governing bodies of all Class 1 municipalities within the state and the county governing bodies in which the Class 1 municipalities are located and the governing bodies of all municipalities located within those counties, and where any such municipality is also located partially within an adjoining county, then the governing body of such adjoining county, and which governing bodies are specifically designated in 40 C.F.R. Part 122, Appendices F, G, H, or I or by ADEM pursuant to the authority delegated to it under the Clean Water Act, 33 U.S.C. § 1251 et seq., as of August 8, 1995."
It seems apparent from a reading of this section of the Storm Water Act that the Act would apply in Jefferson County at the time of its enactment. The parties stipulated that the legislation was not advertised as the Constitution of 1901 would require for local legislation.
In March 1997, acting pursuant to the provisions of the Storm Water Act, Jefferson County, along with 23 municipalities located within Jefferson County or partially therein, formed the Storm Water Management Authority, Inc., and, as authorized by the Storm Water Act, the Jefferson County Commission approved Ordinance No. 97-783, in July 1997, entitled: "An Ordinance to levy storm water management program fees on parcels of property located within the unincorporated limits of Jefferson County." The Ordinance provided, in part:
 "1. Under the authority of Act 95-775, the County Commission hereby levies upon each parcel of real property or portion thereof located within the unincorporated limits of Jefferson County a fee to be determined as follows for the purpose of funding the storm water management program, including the Storm Water Management Authority, Inc. and to comply with the requirements of NPDES Permit ALS000001 held by the County jointly with other municipalities in Jefferson County.
 "2. Alternatively, pursuant to the police power of the Jefferson County Commission, the County Commission hereby levies upon each parcel of real property or portion thereof located within the unincorporated limits of Jefferson County a fee to be determined as follows for the purpose of funding the storm water management program, including the Storm Water Management Authority, Inc. and to comply with the requirements of NPDES Permit ALS000001 held by the county jointly with other municipalities in Jefferson County:
 "A. The fee is levied on properties designated by the Jefferson County Tax Assessor pursuant to Amendment 325 to the Constitution of Alabama, 1901, and Sec. 40-8-1, Code of Alabama, 1975, as Class I and class II land use classification in the amount of $15 per parcel or portion thereof located in the unincorporated limits of Jefferson County.
 "B. The fee is levied on the properties designated by the Jefferson County Tax Assessor pursuant to Amendment 325 to the Constitution of Alabama, 1901, and Sec. 40-8-1, Code of Alabama, 1975, as Class III land use classification in the amount of $5 per parcel or portion thereof located in the unincorporated limits of Jefferson County."
The original plaintiffs, Phillip Ford and Shannon Ford, filed this class action on March 2, 1998, challenging the constitutionality of the Storm Water Act and the storm-water fee imposed by the county *Page 848 
ordinance. [1] They named as defendants the Jefferson County Commission, the Storm Water Management Authority, and the tax assessor of Jefferson County.
The plaintiffs amended the complaint to add Ray Densmore and Brenda Densmore, the appellants here, as plaintiffs and the 23 municipalities in Jefferson County as defendants; the plaintiffs subsequently moved to dismiss the original plaintiffs, and they were dismissed.
The defendants timely answered the complaint and filed a counterclaim for a declaratory judgment; they subsequently filed a motion to dismiss or, in the alternative, a motion for summary judgment. The motion was accompanied by supporting affidavits and other documents. After receiving briefs from the parties and hearing oral argument from both sides, the trial court granted the defendants' motion for summary judgment, holding that the Storm Water Act had been properly enacted as a general law and that any constitutional infirmities in the Storm Water Act had been cured when the Act was codified into the Code of Alabama and carried into the Cumulative Supplement to the Code. The plaintiffs appealed. The two arguments that both sides address are whether the Storm Water Act was a local act that was not properly adopted by the Legislature and whether the fees imposed on property owners were valid and enforceable.
 II.
We first state the scope of our review, which was recently stated inWatkins v. Board of Managers of the City of Birmingham Retirement Relief System and Firemen's Policemen's Supplemental Pension System,802 So.2d 190 (Ala. 2001): when reviewing a ruling on a motion for a summary judgment, this Court applies the same standard the trial court used in determining whether the evidence before the court made out a genuine issue of material fact. When a party moving for a summary judgment makes a prima facie showing that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989).
 III.
We first consider the summary judgment as it relates to the plaintiffs' claim that the Storm Water Act is a local law and not a general law. The plaintiffs argue that the Legislature, in adopting the act, failed to comply with Art. IV, § 106, Const. of Ala. 1901, as amended by Amendment No. 341.[2] *Page 849 
The first question we must answer, therefore, is whether the Storm Water Act is a local law or a general law. Amendment 397 of the Alabama Constitution of 1901 defines "general law" and "local law" as follows:
 "A general law is a law which in its terms and effect applies either to the whole state, or to one or more municipalities of the state less than the whole in a class. A general law applicable to such a class of municipalities shall define the class on the basis of criteria reasonably related to the purpose of the law, provided that the legislature may also enact and change from time to time a general schedule of not more than eight classes of municipalities based on population according to any designated federal decennial census, and general laws for any purpose may thereafter be enacted for any such class. Any law heretofore enacted which complies with the provisions of this section shall be considered a general law.
 "No general law which at the time of its enactment applies to only one municipality of the state shall be enacted, unless notice of the intention to apply therefor shall have been given and shown as provided in Section 106 of this Constitution for special, private or local laws; provided, that such notice shall not be deemed to constitute such law a local law.
 "A special or private law is one which applies to an individual, association or corporation. A local law is a law which is not a general law or a special or private law."
We begin our review by noting that this Court has held that when a dispute arises over whether a law is local or is general in nature, a court is obligated, when possible, to read the law as a general one.Norton v. Mobile County, 562 So.2d 503 (Ala. 1990). It is quite clear, as previously stated, that the Storm Water Act defines "governing body" in such a manner that, at the time of its passage, the Act applied to Jefferson County and to municipalities located therein or partly therein.
In determining whether an act is a general act or a local act, a court considers the principle that "`[i]n order for . . . a law based on a population standard which applies to only one political subdivision to be upheld as a general law, the difference in population must be substantial, the classification must be made in good faith by the legislature, and the classification must be reasonably related to the purpose sought to be achieved by the act." City of Mountain Brook v. GreenValley Partners I, 690 So.2d 359, 362 (Ala. 1997) (quoting Masters v.Pruce, 290 Ala. 56, 66, 274 So.2d 33, 42 (1973)). We consider that principle applicable to the Storm Water Act we are considering in this case, because this Court has stated:
 "In addressing the alleged constitutional infirmities of a statute, we are conscious of the well-established rule requiring courts to defer to the policy-making authority of the Legislature, by rejecting constitutional challenges to *Page 850 
statutes, where it is possible to do so. In Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 9-10, 18 So.2d 810, 814-15 (1944), cert. dismissed, 325 U.S. 450 (1945), this Court stated:
 "`Uniformly, the courts recognize that [the] power [to strike down a statute as unconstitutional] is a delicate one, and to be used with great caution. . . . It follows that, in passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government. All these principles are embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond reasonable doubt that it is violative of the fundamental law.
 "`Another principle which is recognized with practical unanimity, and leading to the same end, is that the courts do not hold statutes invalid because they think there are elements therein which are violative of natural justice or in conflict with the court's notions of natural, social, or political rights of the citizen, not guaranteed by the constitution itself. Nor even if the courts think the act is harsh or in some degree unfair, and presents chances of abuse, or is of doubtful propriety. All of these questions of propriety, wisdom, necessity, utility, and expediency are held exclusively for the legislative bodies, and are matters with which the courts have no concern. This principle is embraced within the simple statement that the only question for the court to decide is one of power, not of expediency or wisdom.'
"(Citations omitted.)"
City of Orange Beach v. Duggan, 788 So.2d 146 (Ala. 2000).
Based on the authorities quoted here, we agree with the defendants that the Legislature fully complied with the Constitution of 1901 in adopting the Storm Water Act as a general law. But, assuming, arguendo, that § 106, as amended, applied to the Storm Water Act, and that the Act was not advertised as required by § 106, would that invalidate the Storm Water Act? The trial court did not address the issue whether the Storm Water Act was a general law or a local law, but instead held that any constitutional infirmities in the adoption of the Act would have been cured by its codification as part of the Code of Alabama. We agree with the trial court's holding on that issue. This Court has stated that "[a]ll infirmities of legislative procedure in enacting an original act are cured when that act is incorporated into a code and the code adopted by the legislature." Fuller v. Associates Commercial Corp., 389 So.2d 506,509 (Ala. 1980). See, also, State v. Golden, 531 So.2d 941
(Ala.Crim.App. 1988), which cites and quotes Fuller.
In Opinion of the Justices No. 81, 249 Ala. 511, 31 So.2d 721 (1947), this Court rejected a challenge to the constitutionality of a bill imposing a one-cent gasoline tax in counties with a population of over 400,000. This Court took judicial notice that only Jefferson County met the population classification, but held that the bill was nonetheless a general law. Responding to an inquiry by the Senate, the Justices opined:
 "Finally, responding to Section 5 of your inquiry, we note that the mentioned Code sections (Sections 865 et seq., Title 51, Code 1940) with reference to the Commissioner of Licenses of Jefferson County cannot be classified as a *Page 851 
local statute. The statute was passed originally as a general law (General Acts 1931, pages 522 et seq.; State ex rel. Ward v. Henry, 224 Ala. 224, 139 So. 278[17]) and was carried as a general law in the codification of 1940."
249 Ala. at 515, 31 So.2d at 724-25.
The principle that all infirmities of legislative procedure in enacting an original act are cured when that act is incorporated into a code was explained in Fuller v. Associates Commercial Corp., supra. That case involved a constitutional challenge based on a purported violation of § 45 of the Constitution of 1901, which requires that each act contain but one subject. In that case, this Court stated:
 "All infirmities of legislative procedure in enacting an original act are cured when that act is incorporated into a code adopted by the legislature. Bluthenthal v. I. Trager and Company, 131 Ala. 639, 31 So. 622 (1901); Bales v. State, 63 Ala. 30
(1879)."
389 So.2d at 509. The plaintiffs are aware of this general principle of law, but they argue that the codification of the Storm Water Act in the Cumulative Supplement of the Code did not have the effect of making the act a general law. They rely on Ex parte Coker, 575 So.2d 43 (Ala. 1990), in support of their argument that the codification of the Storm Water Act in the Cumulative Supplement of the Code of Alabama 1975 did not have the effect of making the act a general law. We believe the arguments of the plaintiffs are inapposite.
This Court, in Ex parte State Department of Revenue, 683 So.2d 980, 982
(Ala. 1996), discussed the decision of Ex parte Coker on the principle of law we are now discussing — the effect of codification of a prior act:
 "This Court has held that, by the process of adopting the entire Code, the legislature repeals any portion of the original legislation and prior codification not present in that adoption. See Ex parte Coker, 575 So.2d 43
(Ala. 1990). In other words, the adoption of the entire Code supersedes the original enactments and any prior codification. After this Court decided Coker,
the legislature refined the codification process and began the current practice of annually codifying legislation. Under this new procedure, the Code commissioner continually reviews the manuscript of the Code and directs the Code publisher to publish replacement volumes and an annual supplement that incorporates into the Code the most recent acts of a general and permanent nature. Once the annual supplement and the replacement volumes are published, they are reviewed by the Code commissioner, who prepares an annual codification bill to adopt the replacement volumes and annual supplement. This Court, however, has not considered the question whether this process has the same effect as a codification of the entire Code for the purpose of resolving conflicts between the Code and the original act. In other words, we have not determined if these cumulative supplements also supersede the original enactment."
Although this Court found it unnecessary to discuss the annual codification process in Ex parte State Department of Revenue, the Court did note that the annual codification process was begun after this Court had decided Coker.
In Swift v. Gregory, 786 So.2d 1097 (Ala. 2000), this Court did consider the effect of codification on the validity of an act. In that case, Barbara Swift had served as the register of the Calhoun Circuit Court from February 23, 1975, until September 30, 1996. During her tenure, she elected to participate in the supernumerary program *Page 852 
(§ 12-17-140 et seq., Ala. Code 1975). In 1996, Swift filed a declaration of intention to assume supernumerary status because of a permanent disability. Swift furnished certifications from three physicians stating that she was permanently disabled and incapable of carrying out the duties of her position. The director of the Administrative Office of Courts, Frank Gregory, denied Swift's request for supernumerary status, because she was not yet 55 years old. He contended that § 12-17-140
required that a clerk or register be at least age 55 to assume supernumerary status. Swift sued the director in the Montgomery Circuit Court, asking the court to hold that § 12-17-140 permitted her to be named as a supernumerary register, on the ground of her permanent disability, and thus entitled to be paid her annual salary, even though she had not reached the age of 55. The parties agreed to submit the matter on the pleadings and the briefs, and the trial court entered a judgment in favor of the director. On appeal, Swift argued that the Legislature, in the original Act, had intended for the age restriction to apply only to subsection (5) of the act, dealing with retirement after 18 years of service, because, she said, it was illogical to deny supernumerary status on the basis of the age restriction when an applicant is determined to be disabled — an involuntary status. She contended that the codification of the Act resulted in an omission that the Legislature did not intend, an omission that left a disabled clerk or register with nothing until he or she reached the age of 55. This Court stated:
 "We cannot agree with Swift's contention that the Legislature did not intend for the changes made from the provisions of the original Act in § 7-112 to the codified statute (§ 12-17-140) to be effective. Once the Code Commission modifies an act and the Legislature thereafter adopts a Code containing the modification, the modification has the force of law.
 "`It is the settled law of this state that the Code of Alabama . . . is not a mere compilation of the laws previously existing, but is a body of laws, duly enacted, so that laws, which previously existed, ceased to be law when omitted from [the] Code, and additions, which appear therein, become the law from the approval of the Act adopting the Code.'
 "State v. Towery, 143 Ala. 48, 49, 39 So. 309, 309
(1905)."
We do not believe, in view of what this Court said in Swift and Exparte Department of Revenue, that Ex parte Coker is determinative on the effect of annual codification of previously adopted legislation; therefore, we cannot accept that what this Court said in Ex parte Coker
is controlling, insofar as the facts of this case are concerned, facts that are substantially different from those in Ex parte Coker. In that case the Court held that the codification principle could not be applied to resurrect an act that had never actually become law because it was pocket-vetoed by the Governor.
Based on the foregoing, and even assuming, arguendo, that the Storm Water Act was a local act when adopted, we hold that the trial court did not err in holding that it was unnecessary to determine whether the Storm Water Act was a general law or a local law, because any infirmities in the adoption of the Act were cured by its codification as part of the Code of Alabama 1975.
 IV.
Did the trial court err in determining that the methodology used by Jefferson County in assessing the program fees was valid? *Page 853 
The Densmores argued to the trial court, and they argue here on appeal, that the storm-water fee is an illegal, unconstitutional tax because, they say, the primary purpose of the fee is to raise revenue and there is no relationship between the amount of the storm-water fee and the benefit each property owner receives from the Storm Water Management Authority.
Is the storm-water fee a tax or a fee? This Court in Opinion of theJustices No. 363, 694 So.2d 1307, 1309 (Ala. 1997), stated:
 "The Court in State v. Commercial Loan Co., 251 Ala. 672, 38 So.2d 571 (1948), addressed the distinction between taxes that are purely revenue measures and `taxes' or licenses, fees, or charges that are principally regulatory in purpose and effect. The Court distinguished between a `true' tax, which is a revenue measure, and a license, which requires the payment of a fee or charge as part of a regulatory measure imposed pursuant to the police power of the state. The Court noted that license fees are often informally referred to as taxes:
 "`The word tax, unless expressly defined, is inclusive of both levies for revenue purposes and levies for regulatory purposes. In other words license fees are commonly called taxes even though strictly speaking they may be a charge or fee rather than a tax.'"
"251 Ala. at 675, 38 So.2d at 573-74."
The Densmores argue, citing no authority, that the primary purpose of the storm-water-program fee is to raise revenue. Furthermore, they maintain the fee lacks any regulatory component. Jefferson County argues, in opposition, that the federal Clean Water Act imposed phased-in requirements on Jefferson County to control storm water and that all of the storm-water fees collected have been used exclusively to fund the storm-water program mandated by state and federal law. In addition, the County argues, the Storm Water Ordinance provides that Jefferson County levies a fee, under the Storm Water Act, and, alternatively, under its police power, "for the purpose of funding the storm water management program, including the Storm Water Management Authority, Inc. and to comply with the requirements of NPDES Permit ALS000001." The County also argues that the Act, which the Storm Water Ordinance references, authorizes the assessment of fees "to implement this chapter or to comply with all provisions of storm water laws." § 11-89C-9(d), Ala. Code 1975.
In reviewing the record before us, we note that Teresa Lucas, a licensed professional engineer, testified that the Environmental Protection Agency ("EPA") required the Storm Water Authority, as an NPDES permit holder, to demonstrate that it had a stable funding source, to make sure that the storm-water program would operate without interruption.
The evidence, even when viewed in a light most favorable to the Densmores, shows that the Storm Water Authority adopted the storm-water fee as a result of federal and state mandates that it comply with the Clean Water Act and the NPDES permits.
The Densmores also argue the storm-water fee is a tax because, they say, there is no relationship between the amount of the storm-water fee imposed on a parcel of property and the amount of benefit the property owner receives. In contrast, Jefferson County maintains that Alabama law does not require that fees precisely comport with the benefits provided to property owners. We agree with the County's argument. *Page 854 
This Court, in Board of Water Sewer Commissioners of the City ofMobile v. Yarbrough, 662 So.2d 251 (Ala. 1995), upheld the rationale that, for a fee to be sustained as valid, the benefit conferred on property owners need not relate directly to the exact amount paid. The Court said that a "substantial indirect benefit" to a property owner would suffice to uphold the validity of a fee. 662 So.2d at 255. InYarbrough, the Board was created to operate Mobile's water and sewer systems and to address such problems as the fact that "raw sewage was being emptied into Mobile Bay and other public waterways." Id. at 252. The plaintiff, whose property was not connected to the sewer system, sued the Board when it began charging residents who were not connected to its sewer system a flat monthly fee purportedly relating to sewer service. Formerly, the Board had charged a combined fee for water and sewer services to all residents, whether they used the sewer service or not. This Court upheld the Board's prior fee structure and held that a municipal utility is authorized to set fees so as to create a surplus. The Court also held that any surplus resulting from the operation of the water service could lawfully be used for the sewer service, which, this Court found benefited all residents, "regardless of whether the customer received sewer service." Id. at 253. This Court also upheld the new fee structure, which charged a separate sewer-related fee to residents who lacked sewer service, concluding that every member of the community received a "substantial indirect benefit" from the sewer service, regardless of whether the resident was connected to the system. This Court agreed with the Board's statement in a 1954 resolution that "[t]he citizens of the City of Mobile . . . are directly or indirectly affected by the results of the pollution of [public] waters and the beneficial results to be obtained by the elimination of the pollution will be a public benefit to the entire community and citizens thereof." 662 So.2d at 254.
Applying the principles of statutory construction applicable when the constitutionality of legislative action is challenged, and based on previous decisions of this Court, we conclude that the trial court did not err in determining that the storm-water-program fee is a valid fee for the purpose of regulating storm-water discharge and that it is not a tax designed to raise revenue.
In reaching this result, we have considered the recent holding of this Court in Lightwave Technologies, LLC v. Escambia County,804 So.2d 176 (Ala. 2001), in which this Court determined that a charge assessed by Escambia County on Lightwave Technologies, LLC ("Lightwave"), was a "tax" instead of a "fee" and was invalid. In that case, Lightwave contended that the County lacked the statutory authority to impose a $1.00-per-linear-foot charge for the use of its rights-of-way, as set out in § 23-1-85, Ala. Code 1975. The Court, after determining that the assessed charge was a "tax" instead of a "fee," agreed with Lightwave's argument. The Court held:
 "Under Alabama law it is well settled that `the power to tax does not inhere in county governmental bodies' and that `[c]onsequently, authority for the imposition of county taxes must proceed from an express legislative grant.' Ex parte Coffee County Comm'n, 583 So.2d 985, 986 (Ala. 1991) (citations omitted). Because the Legislature had made no such grant, the County had no authority to impose the tax."
804 So.2d at 180. We have determined that the Storm Water Act was validly enacted by the Legislature, and we have also determined that the primary purpose of the assessment was not for the purpose of raising revenue; consequently, we conclude *Page 855 
that this case is distinguishable from Lightwave Technologies.
We conclude that the trial court did not err in holding that the Storm Water Act was a general law; that the storm-water fee is valid; and that Jefferson County is not required to demonstrate a direct benefit to each person assessed the storm-water fee, because, as this Court held inYarbrough, a valid fee may be sustained based upon the indirect benefit or a public benefit to the persons assessed the fee. The judgment of the trial court is due to be affirmed.
In affirming the judgment of the trial court we note that the Chief Justice, in his dissenting opinion, disagrees with the conclusion that we reach on the issues that the parties presented to us on appeal, but he also notes "an issue in this case that the parties have not raised," but one that he states "should be dispositive" — that Birmingham was not a Class 1 municipality at the time the Storm Water Management Act was adopted in 1995. As the Chief Justice notes, this issue was not raised or addressed by the parties, and this Court has held on more than one occasion that it "will not reverse the trial court's judgment on a ground raised for the first time on appeal." Smith v. Equifax Services, Inc.537 So.2d 463, 465 (Ala. 1988), citing Costarides v. Miller, 374 So.2d 1335
(Ala. 1979).
Although we elect not to address the issue the Chief Justice raises relating to Class 1 municipalities that the parties did not argue on appeal, our refusal to address that issue should not be construed to mean that we agree with the views expressed in the dissenting opinion. See, Ala. Code 1975, § 11-40-12(a), which provides, in part, that "[t]here are hereby established eight classes of municipalities based on the population as certified by the 1970 federal decennial census, asauthorized by amendment No. 375, Constitution Of Alabama, 1901. . . ." (Emphasis added.)
This opinion was prepared by Retired Justice Hugh Maddox, sitting as a Justice of this Court pursuant to § 12-18-10(e), Ala. Code 1975.
AFFIRMED.
Houston, Lyons, Brown, Harwood, Woodall, and Stuart, JJ., concur.
Moore, C.J., and Johnstone, J., dissent.
See, J., recuses himself.
[1] The trial court certified the class for the limited purpose of determining the facial validity of the Storm Water Act, and no argument is made on this appeal regarding the propriety of that class certification.
[2] The defendants stipulated that the act was not advertised as required by § 106, as amended by Amendment No. 341, which provides as follows:
 "No special, private, or local law shall be passed on any subject not enumerated in section 104 of this Constitution, except in reference to fixing the time of holding courts, unless notice of the intention to apply therefor shall have been published, without cost to the state, in the county or counties where the matter or thing to be affected may be situated, which notice shall state the substance of the proposed law and be published at least once a week for four consecutive weeks in some newspaper published in such county or counties or if there is no newspaper published therein, then by posting the said notice for two consecutive weeks at five different places in the county or counties prior to the introduction of the bill; and proof that said notice has been given shall be exhibited to each house of the legislature through a certification by the clerk of the house or secretary of the senate that notice and proof was attached to the subject local legislation and the notice and proof shall be attached to the original copy of the subject bill and shall be filed in the department of archives and history where it shall constitute a public record. The Courts shall pronounce void every special, private, or local law which the journals do not affirmatively show was passed in accordance with the provisions of this section."